## PHILLIPS WALSH *vs.* RUFUS D. HALL.

Where a horse is exchanged for land, and having afterwards returned to the possession of the original owner, the latter is sued for it, the allegation in the answer, that the defendant had agreed to exchange the horse for a tract of land on a certain creek. adjoining his own, and that the plaintiff had falsely and fraudulently asserted title to said tract, and had exhibited a deed to himself, for a tract on the same creek, and that the plaintiff well knew, that the defendant was only desirous of obtaining title to the particular tract indicated by him, and such was a material inducement to the exchange, would not have been *available*, as a defence under the former system, and but for the wise and beneficent provisions of the C. C. P., the defendant would have been driven to a separate action; but such an statement under the C. C. P., does constitute a good *counter-claim, within the meaning* of the Code,

2. Ordinarily the maxim of *caveat emptor*, applies equally *to sales of* real and personal property, and is adhered to in all courts, where there is no fraud.

3. But if representations made by one party to a contract, which may be reasonably relied on by the other, constitute a material inducement to the contract ; are knowingly false; cause loss to the other party relying on them ; and such other party has acted with ordinary prudence, he is entitled to relief in any Court of Justice.

4. If the parties have equal means of information, the rule of *caveat emptor* applies and an injured party cannot have redress, if he fail to avail himself of those sources of information which he may readily reach, unless prevented by the artifice or contrivance of the other party.

5. So, if the false representation is a mere expression of commendation, or simply a matter of opinion, the parties are considered as standing on an equal footing, and the courts will not interfere.

6. In contracts of this character, fraud without damage, or damage without fraud, are usually not the subject of an action for deceit.

7. In a case like that set forth in the answer, the purchaser of land is not required, in order to guard against the fraudulent representations of a vendor, to cause a survey to be made ; unless some third person is in possession claiming title ; or there is some dispute about boundary or as to the true location ; or he has received some information which would reasonably induce him to suspect fraud.

S.  The general custom of conveying land, according to the calls of old deeds, and without a survey, is sufficiently established to be reasonably relied on by a purchaser, as to description of location and boundary.

The cases of *Fagan* v. *Newson*, 1 *Dev.* 20. *Saunders* v. *Hatterman*, 2 *Ired.* 32. *Lytle* v. *Bird*, 3 *Jones*, 222, and *Credle* v. *Swindell*, 63 *N. C. R.*, 305, cited, approved and distinguished from the principal case.

This was a civil action, heard on complaint, counter-claim and demurrer, before his Honor, Judge Mitchell, at Fall Term 1871, of Caldwell Superior Court. The plaintiff, in his complaint, alleged title to a horse in himself, and that the same had been taken out of his possession by the defendant, and was detained after demand, and demanding appropriate relief.

The defendant by his answer and counter claim, denied that the plaintiff was the owner of the horse, in equity; that the horse had been in possesion of the plaintiff, but had escaped, and having strayed back to his old home, had been ever since retained in his custody. That he was the owner of a tract of land in Wilkes county, lying on Elk Creek; and that the plaintiff pretended to be seized of a tract lying on the same creek, and adjacent to the land owned by the defendant, which he knew the defendant was desirous to purchase; that the plaintiff approached the defendant, and proposed to him to exchange the land for the said horse, which proposition, the defendant at first rejected, on the ground, that he heard that one Hendricks claimed the land; the plaintiff, thereupon, positively asserted that the true title was in himself; that said land once belonged to one Witherspoon, who had conveyed to him, and that Hendricks had no title; that the deed from Witherspoon was produced, and purported to convey a tract of land, lying on Elk Creek; that, thereupon, the defendant accepted the proposition of the plaintiff, took a deed from him, following the boundaries contained in the Witherspoon deed, and delivered to plaintiff the horse; that the plaintiff, during the negotiation, frequently asserted that the deed from Witherspoon, covered the land which he proposed to exchange for the horse;

that he had been in possession for more than seven years, under the said deed, and that by virtue of said deed and possession, he had acquired a good title thereto; that the defendant, confiding in these representations, made the trade.

The counter-claim further set forth that the defendant sometime after the trade, ascertained that the deed from plaintiff did not cover the land he was seeking to purchase, or any part of it, but another tract adjoining the tract which defendant was desirous to obtain, and thought he had obtained, and the title to the tract which he wished to purchase, and which the plaintiff professed to sell, and which he said the boundaries of his deed covered, was, in one Ferguson, and that this was well known to the plaintiff, and that the defendant was ignorant thereof, and concludes by alleging the entire insolvency of the plaintiff, and by an appropriate demand for relief on his counter-claim.

To this counter-claim a demurrer was interposed, which was sustained by His Honor, who gave judgment for plaintiff, and thereupon the defendant appealed.

*Armfield* for the plaintiff.
*Folk* for the defendant.

The answer of the defendant may contain a statement of any new matter constituting a defense or counter claim. C. C. P., sec. 100.

The defendant may set forth by answer as many defences and counter claims, as he may have, whether they be such as have heretofore been denominated legal or equitable, or both. Sec. 102.

As a special plea had to confess and avoid the cause of action alleged in the declaration, so, new matter is that which admits and avoids the cause of action set forth in the complaint. Under the head of equitable defences are included, all matters which would have authorized an application to a Court of

Equity for relief against a legal liability, but which, at law, could not be pleaded in bar. *Harshaw* v. *Woodfin*, 65 N. C., p., 688, *Clark* v. *Clark, ibid* p., 660. If this be so, the defendant is entitled to judgment for the demurer admits the facts set forth in the answer, and they are sufficient to induce a Court of Equity to rescind the contract. *Blackwood* v. *Jones*, 4 *Jones' Eq.*, 54. *Woods* v. *Hall*, 1 *Dev. Eq.*, 411. Courts of Equity rescind executed contracts on the ground of fraud. *Sparks* v. *Messick*, 65 *N. C., p.* 440., *C. C. P., sec.* 248.

The action is for the delivery of specific personal property, i. e., an action of detinue. This action is distinguishable from an action of trespass.

In detinue, the plaintiff must prove property, either general or special. In trespass, possession is sufficient against one who cannot show a better right than plaintiff. *Armory* v. *Delamirie, Smith's* leading cases, vol. 1. Had the defendant committed a trespass, by taking the horse, and been sued for the taking, it may be that he could not have interposed the equitable defence. But in this action, the plaintiff relies on property, which he acquired by contract tainted with fraud, and when the contract is rescinded, the plaintiff has no property.

It must be admitted, that defendant can file a bill to rescind the contract, but to require him to do so, would be to put us back to the place from which we started, and defeat the object of the Code, which was to settle all matters in one suit.

DICK, J. This is a civil action, in the nature of an action of detinue, to recover a horse from the defendant.

The defendant filed an answer, controverting some of the allegations of the complaint, and made a statement of new matter, which he insisted, constituted a counter-claim to the plaintiff's cause of action. The plaintiff demurred, and thereby admitted the truth of the defendant's statement of new matter, and we must consider whether the admitted facts constitute a good counter-claim in this action.

PHILLIPS WALSH *v.* RUFUS D. HALL.

The defendant alleges that he was the owner of the horse in controversy, and exchanged it with the plaintiff for a **certai**n tract of land, which the plaintiff wilfully and falsely represented as being contiguous to the land of the defendant—that he was very desirous of obtaining a certain adjoining tract of land, and this desire of the defendant was known to the plaintiff, and was a material inducement to an exchange of property ; that the land is not adjoining, and this fact was well known to the plaintiff; and thus the horse was obtained by actual fraud from the defendant, and he asks that the contract may be rescinded. This new matter set up by the defendant, is connected with, and forms a material part of the contract, out of which this cause of action arose, and constitutes a proper counterclaim ; and we must consider whether he is entitled to the relief which he demands.

The maxim of *caveat emptor*, is a rule of the common law, applicable to contracts of purchase of both real and personal property, and is adhered to, both in courts of Law and courts of Equity, where there is no fraud in the transaction. Where land has-been sold, and a deed of conveyance has been duly delivered, the contract becomes executed, and the parties are governed by its terms, and the purchaser's only right of relief, either at law or in equity, for defects or incumbrances, depends, in the absence of fraud, solely upon the covenants in the deed which he has received. *Rawle on Covenants for Title*, 459.

If the purchaser has received no covenants, and there is no fraud vitiating the transaction, he has no relief for defects or incumbrances against his vendor, for it was his own folly to accept such a deed, when he had it in his power to protect himself by proper covenants.

But in cases of positive fraud a different rule applies. The law presumes that men will act honestly in their business transactions, and the maxim of *vigilantibus non dormientibus jura subveniunt* only requires persons to use reasonable dili-

gence to guard against fraud; such diligence as prudent men usually exercise under similar circumstances. In contracts for the sale of land, purchasers usually guard themselves against defects of title, quantity, incumbrances and disturbance of possession by proper covenants; and if they do not use these reasonable precautions, the law will not afford them a remedy for damages sustained, which were the consequences of their own negligence and indiscretion.

But the law does not require a prudent man to deal with every one as a rascal, and demand covenants to guard against the falsehood of every representation, which may be made, as to facts which constitute material inducements to a contract. There must be a reasonable reliance upon the integrity of men, or the transactions of business, trade and commerce could not be conducted with that facility and confidence which are essential to successful enterprise, and the advancement of individual and national wealth and prosperity. The rules of law are founded on natural reason and justice, and are shaped by the wisdom of human experience, and upon subjects like the one which we are considering, they are well defined and settled.

If representations are made by one party to a trade which may be reasonably relied upon by the other party—and they constitute a material inducement to the contract—and such representations are false within the knowledge of the party making them,—and they cause loss and damage to the party relying on them, and he has acted with ordinary prudence in the matter, he is entitled to relief in any court of justice.

In our Courts the injured party may bring a civil action in the nature of an action on the case for deceit, and recover the damages which he has sustained; and if this remedy will not afford adequate relief he may invoke the equitable jurisdiction of the Court to rescind the contract and place the parties in *statu quo*

PHILLIPS WALSH v. RUFUS D. HALL.

No specific rule can be laid down as to what false representations will constitute fraud, as this depends upon the particular facts which have occurred in each case, the relative situation of the parties and their means of information. Examples are given in the books which have established some general principles which will apply to most cases that may arise. If the falsehood of the misrepresentation is *patent* and a party accepts and acts upon it with "his eyes open," he has no right to complain. If the parties have equal means of information, the rule of *caveat emptor* applies, and an injured party cannot have redress, if he fail to avail himself of the sources of information which he may readily reach, unless he has been prevented from making proper inquiry, by some artifice or contrivance of the other party. Where the false representation is a mere expression of commendation, or is simply a matter of opinion, the parties stand upon equal footing and the courts will not interfere to correct errors of judgment. Where a matter, which forms a material inducement, is peculiarly within the knowledge of one of the parties and he makes a false representation as to that fact, and the other party, having no reason to suspect fraud, acts upon such statement and suffers damage and loss, he is entitled to relief. Whenever fraud and damage go together, the Courts will give a remedy to the injured party. Broom's Leg. Maxims, 739.

Adam's Equity, 176. Story's Eq. Juris., chap. 6. Atwood v. Small, 6 Ck and Fin., 232. Chitty on Con., 681. Broom's Com. 347.

The Courts must determine questions of fraud arising upon ascertained facts, and although the principles of law are well-defined and settled, errors in their application have produced some conflict in adjudicated cases.

We will now proceed to apply the principles of law to the the facts admitted in the pleadings in the case before us, and then briefly review the previous cases which have been decided in this State upon a state of facts somewhat similar.

PHILLIPS WALSH *v.* RUFUS D. HALL.

It appears that the defendant resided on Elk Creek, and was very desirous of obtaining a certain tract of adjoining land. The plaintiff knew this fact and pretended to own said land, and offered to exchange it with the defendant for the horse in controversy. The defendant at first refused to make the exchange for the reason that one Hendricks claimed the land.

The plaintiff then positively asserted, that he was the owner, and had purchased the land from Witherspoon, and had a deed, and that Hendricks had no claim whatever; as he (plaintiff) had been in the actual possion and cultivation of the land, under his (Witherspoon's) deed, for more than seven years. This deed was produced, and it purported to convey a tract of land on Elk Creek; and the plaintiff asserted that he had been in the actual use and occupation of the land which he proposed to sell, for several years.

Upon these representations, which were positively made, and frequently asserted, the defendant exchanged the horse for the land, and received a deed describing the land as lying on the waters of Elk Creek. The deed was written by a nephew of the plaintiff, who kept the deeds of his uncle, and was present during the negotiations for the trade.

The defendant alleges, that he has discovered that the land which he thought he was purchasing, belongs to another person, and that the deed which he received covers an adjoining tract; and that the plaintiff well knew these facts at the time he executed the deed, and that his representations were false and fraudulent.

So it appears that the plaintiff, by false representation about a matter, which was a material inducement to the contract—and which was false within his knowledge—obtained the horse of the defendant. The circumstances attending the trade, were such as to induce a reasonable reliance upon the truth of the statements of the plaintiff, and the defendant neglected no precaution but a survey, in guarding himself against fraud.

PHILLIPS WALSH *v.* RUFUS D. HALL.

The transaction was like hundreds of others in the country, which are entirely fair and honest, and we do not regard the want of a survey as *laches* on the part of the defendant. A large majority of the sales of land, in the State, are completed by the delivery of a deed, copied from some previous deed, and surveys are not generally made, unless there is some dispute abut the boundaries. Where the grantor has been in the possession of land for a number of years, exercising acts of ownership, his positive assertion as to location may be reasonably relied upon without a survey.

In the case of *McFerran* v. *Taylor*, 3 *Cranch*, 270, Chief Justice Marshall says : " He who sells property on a description given by himself, is bound to make good that description ; and if it be untrue in a material point, although the variance be occasioned by a mistake, he must still remain liable for that variance. In this case the defendant has sold land on Hingston, and offers land on Slate. He has sold that which he cannot convey, and as he cannot execute his contract he must answer in damages."

If such a contract was made by fraudulent representations, a Court of Equity would not hesitate to rescind the contract.

In our case the plaintiff is insolvent, and prosecutes his unjust claim *in forma pauperis*, and the defendant would be without a speedy and substantial remedy against this gross fraud, but for the wise and beneficent provisions of our Code, which blend in one system, legal and equitable remedies.

From the facts admitted, we think the defendant is entitled to a rescission of his contract with the plaintiff, and to retain possession of the horse sued for.

We also think that the defendant might have sustained a civil action to recover damages occasioned by the fraudulent representations of the plaintiff, although this opinion seems to be in conflict with previous decisions of this Court.

The case of *Fagan* v. *Newson*, 1 Dev. 20, was the first case upon this subject, and was correctly decided.

The plaintiff had repudiated the executory contract, which was induced by the fraudulent representations of the defendant, and had suffered no damage but the loss of a good bargain, and he could have easily recovered his purchase money by an action of assumpsit. The principles for which we are contending are distinctly stated in that case, "the plaintiff can not recover in an action of deceit, unless he proves not only that a fraud has been committed by the defendant, but also that it has occasioned loss and damage to the plaintiff." Chief Justice Taylor, says further, "It is a very reasonable principle that the purchaser should not be entitled to an action of deceit, if he may readily inform himself as to the truth of the facts which are misrepresented. In this case, the plaintiff knew that the defendant had no title to the bottom land, and that it was the property, and in the possession of another." He acted with a full knowledge of the falsity of the representation and sustained no damage, and of course was not entitled to maintain his action. In contracts of this character, fraud without damage, or damage without fraud, are usually not the subject of an action for a deceit.

In *Saunders* v. *Hatterman*, 2 Ired., 32, the fraud complained of consisted in a false affirmation of the value of the land sold. This was a matter of opinion and judgment, and the plaintiff could easily have obtained correct information, and his damage was the result of his own negligence and indiscretion.

The rules of law are correctly laid down as to when an action of deceit can be sustained, and they are in accordance with the principles which we have above stated.

*Lytle* v. *Bird*, 3 Jones, 222, and *Credle* v. *Swindell*, 63 *N. C.*, 305, are founded upon the cases above referred to, but in our opinion the principles of law are not correctly applied to the statement of facts.

PHILLIPS WALSH *v.* RUFUS D. HALL.

For the reasons above given we think that a purchaser of land is not required, in order to guard against the fraudulent representations of a vendor, to have a survey made, unless some third person is in possession claiming title; or there is some dispute about boundary, or as to the true location, or he has received some information which would reasonably induce him to suspect fraud. The general custom of conveying land according to old deeds and without a survey, is sufficiently established to be reasonably relied on by a purchaser, as to description of location and boundary.

The location by a survey is a matter of science and skill, and competent surveyors are not easily obtained, and an unskilful surveyor is as apt to mislead as he is to give correct information.

. The demurrer to the answer must be overruled, and the defendant is entitled to have the contract rescinded, unless His Honor in the Court below shall, in the exercise of his discretion allow the plaintiff to reply to the answer, &c. C. C. P., section 131. Let this be certified.

PER CURIAM.                              Judgment reversed.