W. O. BLACKNALL v. W. A. ROWLAND and W. R. COOPER.

*Damages— Contract— Constitution— Condition.*

In an action to recover damages for fraud and deceit, by which plaintiff was induced to contract to purchase corporation stock of no value, it appeared that the contract contained a clause to the effect that the contract was "conditioned" upon the statements of defendants being verified by an expert, after the evidence was closed and counsel was addressing the jury, the Court stated that as plaintiff had not had the statements of defendants verified by the expert, it would instruct the jury that the plaintiff was not entitled to recover: *Held*, to be error.

CIVIL ACTION, brought by appeal from DURHAM Superior Court, before *Boykin, J.*

This action is brought to recover damages occasioned by the false and fraudulent representations of the defendants to the plaintiff, whereby the latter was intentionally misled and induced to buy from the defendants certain shares of the capital stock, of no value, of a corporation named, and in consideration thereof to convey to the defendants his tract land of great value, etc. Having in view the transaction referred to, the parties executed a paper-writing, whereof the following is a copy:

"W. H. Rowland and W. R. Cooper propose to sell, and W. O. Blacknall agrees to buy, the interest of said Rowland & Cooper in fifty shares of the capital stock of the Durham

Sash, Door and Blind Manufacturing Company. As the basis of the proposition and acceptance it is represented and understood that said stock is of the par value of fifty dollars a share; that fifty per cent. of the par value of each share has been paid thereon in cash, and twenty-five per cent. of the par value thereof has been paid by a declaration of dividend out of the net profits of the business and operations of the company, so that seventy-five per cent. of the par value of the stock of said company is now legally paid up; that the company owes for machinery $2,000, for lumber about $____, and a floating debt of $600 to $700. That its assets are available and in good condition, and exceed its liabilities by $3,000; that Rowland & Cooper will be able to legally assign said stock or interest, and have the same duly transferred on the company's books to said Blacknall. In exchange for said stock or interest said Blacknall is to convey to said Rowland & Cooper and their heirs by good and sufficient deed in fee-simple and unincumbered title to twenty-eight acres of land in Durham County, adjoining T. B. Lyon on the east, North Carolina Railroad Company on the south, W. O. Blacknall on the west, S. J. Hester on the north, it being just east of the thirty acres now under mortgage.

" This trade is conditioned upon the representations above as to condition of business and stock of said company and other statements being verified upon examination of its affairs by an expert book-keeper of Blacknall's selection and at his expense, and upon the condition that his title to the land named above is good. Witness the signatures of W. H. Rowland and W. R. Cooper and W. O. Blacknall, October 4th, 1888."

The defendants denied the material allegations of the complaint. On the trial, the plaintiff put in evidence the paper-writing above set forth, and much other evidence, oral and otherwise. The defendants also introduced several witnesses, who were examined.

After the evidence had closed, and one of the plaintiff's counsel and two of the defendants' counsel had addressed the jury, his Honor stated to plaintiff's counsel that as the plaintiff had not had the books of the corporation examined by an expert book-keeper, he would instruct the jury that the plaintiff was not entitled to recover upon the issues submitted by him to the jury. In deference to this opinion of his Honor the plaintiff submitted to a judgment of nonsuit. Judgment entered. Plaintiff appealed to Supreme Court.

*Mr. J. S. Manning* and *E. C. Smith,* for plaintiff.
*Mr. John W. Graham,* for defendant.

MERRIMON, C. J.: The cause of action alleged in the complaint consists, in substance, of the alleged false and fraudulent representations of the defendants made to the plaintiff in the paper-writing, a copy of which is set forth above, and otherwise as to the condition, circumstances and solvency of the corporation therein named, which the plaintiff reasonably believed to be true, and whereby he was fraudulently misled and induced to buy the shares of stock mentioned of the defendants in that corporation, which were really of no value, and to convey to them his tract of land mentioned of large value; and further, of the false and fraudulent warranty of the truth of such representation made by the defendants to the plaintiff as additional inducement to him to buy such stock of no value.

There was evidence for the plaintiff, on the trial, tending to prove that the representations made by the defendant to him in the paper-writing and otherwise were not true; that the corporation was insolvent; that it was not prosperous, but declining; that its indebtedness was greater and its resources less than represented; that the dividend mentioned was not declared out of the net earnings of the corporation, and that the defendants knew these facts; that they encour-

aged and induced the plaintiff to believe these representations and to close the proposed transaction. There was evidence for the defendants tending to prove the contrary.

In this state of the case the presiding Judge said "that, as the plaintiff had not had the books of the corporation examined by an expert book-keeper, he would instruct the jury that the plaintiff was not entitled to recover." In this there is error. The plaintiff was not concluded by the fact that he did not have such examination made. He was not bound to verify the representations made; he might, as a matter of caution, have done so, but he might not unreasonably believe, rely and act upon the plain, pertinent and material statements made by the defendants to him in the paper-writing and otherwise. If the plaintiff believed them to be true, and acted upon them, and the defendants knew them to be false, and intended fraudulently thereby to induce the plaintiff to purchase their shares of stock, of no value, at the price he paid for them, he might recover, notwithstanding he did not cautiously have their representations verified. Such verification was not intended for the benefit of the defendants; much less was it intended to shield or relieve them from liability for fraud and deceit they might perpetrate upon the plaintiff. The paper-writing, and particularly the last clause of it in respect to the verification of its statements, might, taken in connection with other evidence favorable to the defendants, be evidence of their good faith and going to prove that the plaintiff did not rely upon their representations; but, on the other hand, the same might, along with other evidence favorable to the plaintiff, be evidence of a fraudulent contrivance to deceive and mislead him. Fraud is protean in its devices and endless in its shifts and subterfuges. What is evidence of it, or its absence, oftentimes depends more or less upon the condition of matters and things material and the attending circumstances. In one aspect of the evidence in this case, accepted as true, the

material representations in the paper-writing in effect made to the plaintiff, and other like representations otherwise made to him by the defendants, were grossly false and so within their knowledge. And· it might be fairly inferred, from the nature of the matter and the evidence, that the paper-writing, and particularly the last clause of it, was an artful shift to mislead and deceive the plaintiff, a man little familiar with such matters, as to the sincerity and good faith of the defendants in respect to the proposed sale of the shares of stock mentioned. In another aspect of it more favorable to the defendants, the paper-writing, and especially the last clause of it, would be evidence tending to show their good faith, and that the plaintiff, in buying the shares of stock and the sale of his land, relied upon his own judgment and information gathered from other sources than the defendants. If the defendants knew that the representations made by them in the paper-writing and otherwise, as in evidence, were false—as the evidence, much of it, tended to prove—it would be most unreasonable to infer that they intended or expected the same to be verified or scrutinized. On the other hand, in view of parts of the evidence, the reasonable and just inference would be that the last clause of the paper-writing was inserted to simulate great fairness and candor on the part of the defendants, and thus the more successfully entrap, deceive and mislead the plaintiff, a man, as the evidence tended to show, not familiar with such matters. Such view of the evidence would be strengthened by the fact that the verification suggested was to be made by an expert book-keeper, at the expense of the plaintiff. Shrewd men of experience might think and expect that a man of small experience, after such flattering representations, would not have such verification made at his own cost.

Hence, the paper-writing, including the last clause of it, was simply evidence. It did not conclude the plaintiff, as the Court intimated it did.

There is, therefore, error.   The judgment of nonsuit must be set aside and the case disposed of according to law.   To that end, let this opinion be certified to the Superior Court. It is so ordered.                                    Error.