JOHN L. HALL v. LEANDER TILLMAN et al.

*Claim and Delivery—Form of Judgment—Liability of Sureties upon Defendant's Undertaking—Costs—Injuries to Property in Seizure.*

1. In claim and delivery, when for any cause judgment cannot be given for the recovery of the property in specie, as where *pendente lite* the property was sold under order of Court, judgment should be rendered for the recovery of the value of the property at the time of the tortious taking, with interest thereon, in lieu of damages for deterioration and detention, and for the costs.

2. Where, in claim and delivery, the defendant pleads that he became possessed of the property under a contract of sale, upon the facts being so found by the jury (the property having been sold under an order of Court *pendente lite*) judgment should be rendered against the sureties to the defendant's undertaking for the penalty of the bond, to be discharged upon the payment of the contract price with interest and costs, less the payments by the defendant.

3. The sureties on a defendant's undertaking in claim and delivery are liable for the costs of the action upon the plaintiff's recovery, notwithstanding the amendment by Laws of 1885, ch. 50, to *The Code*, § 324.

4. A plaintiff who is adjudged to be the owner of machinery is not liable to the defendant for injuries to a shelter covering it, done in removing it under an order in claim and delivery proceedings unless wantonly done.

This was a CIVIL ACTION, in which the ancillary proceeding of claim and delivery was resorted to for the purpose of acquiring possession of a portable engine and saw-mill, tried at September Term, 1891, of CHATHAM Superior Court, before *McIver, J.*

At Fall Term, 1886, the jury responded in the affirmative to two issues involving the plaintiff's title and right to possession, but did not answer the other issues. Thereupon the Court ordered the engine and saw-mill to be sold, which

was done by the commissioners appointed and the proceeds of sale were paid and sale confirmed. The appeal from that judgment was not perfected.

Subsequently a judgment was rendered for what purported to be, but had never been ascertained by a jury to be, the balance of a debt due the plaintiff from the defendants, against the defendants and the sureties on the replevy bond, That judgment was reviewed on appeal (see case 103 N. C.. 281) and a new trial was granted as to untried issues, leaving the verdict already returned undisturbed.

*First Exception.*—At May Term, 1891, when the case was called the plaintiffs submitted the following issues:

1. What damage has the plaintiff sustained by reason of the detention of the property in controversy by the defendants from November 28th, 1884, to February 12th, 1887?

2. What damage has the plaintiff sustained by reason of the deterioration of the property in controversy from November 28th, 1884, to February 12th, 1887?

The defendants excepted to the issues tendered by the plaintiff, and contended that no issue should be submitted for the plaintiff, he having elected to stand by the judgments of Fall Term, 1886, and February Term, 1887, and reap the fruits of the same. Also, upon the grounds that if any issues were submitted, they should be those submitted at Fall Term, 1886, and not passed upon by the jury, with the following additional issue tendered by the defendants and accepted by the plaintiff: " What damage has the defendant sustained by reason of the tearing down of the house and removing the machinery of the plaintiff?"

The defendants further objected to the issues as tendered by the plaintiff, upon the ground that the time during which damages should be assessed against defendants, should be from November 28th, 1884, to October Term, 1886. The issues tendered by the plaintiff and the one tendered by the

defendants were submitted by the Court, and the defendants excepted.

After the close of the evidence, and during the argument of counsel, his Honor, of his own motion, changed the issues and submitted to the jury those set out in the record, and the defendants did not except.

*Second Exception.*—The plaintiff was examined as a witness in his own behalf, and testified that the mill and engine had deteriorated in value from November 28th, 1884, to February 12th, 1887, a certain sum, and that the mill during that period would have been fairly worth to him the sum of $50 to $60 per month.

The defendants excepted to the evidence as to the monthly value, upon the ground that the witness should testify as to the value of the mill during the period as a whole, and that the interest upon the value at the time of seizure was the true measure of damages.

There was evidence on the part of the defendants tending to show that at the time of the seizure, the property was under repair and had no rental value; that repairs were put upon it by the defendants to an amount of $125.

*Third Exception.*—On the cross-examination of the plaintiff he testified, the defendants objecting, that while the property was in possession of the defendants and before this action was instituted, he had been paid by the defendants the sum of $200 on an alleged contract of sale of the property. During the progress of the trial his Honor withdrew this evidence from the jury, and the defendants excepted.

*Fourth Exception.*—His Honor charged the jury that the interest on the value of the property at the time of the seizure was not the measure of damages for the detention, but that the true measure of damages was the fair rental value during the period, at the place of location, and that the jury might estimate it by the month, as all the evidence intro-

duced tending to show a value, tended to show it by the month. The defendant excepted.

*Fifth Exception.*—The Court further charged the jury that in estimating the deterioration of the property, the jury might consider the price at which the property sold at the commissioner's sale, together with the other evidence in the case, to which charge the defendants excepted. There was a verdict as set out in the record. The defendants moved for a new trial for the errors assigned. The motion was refused and judgment rendered as set out in the record.

*Sixth Exception.*—From which judgment the defendants appealed to the Supreme Court for the errors assigned, and for the further reason that no judgment should be rendered against defendants' sureties for costs.

*Mr. Thomas B. Womack,* for plaintiff.
*Messrs. James H. Headen* and *A. P. Gilbert,* for defendants.

AVERY, J.—after stating the facts: Under the provisions of the original section (326 of *The Code*) the bond filed by the defendants in the ancillary proceeding would have been conditioned for the delivery to the plaintiff of the property described in his affidavit, "if such delivery should be adjudged, and for the payment of *such sum as may for any cause be recovered against the defendant.*" But it was provided by the act amendatory of that section (ch. 50, § 2, Laws of 1885) that such bond should thereafter be conditioned " for the delivery thereof *with damages for its deterioration and its detention, if delivery can be had, and if such delivery cannot, for any cause, be had, for the payment to him of such sum as may be recovered against the defendant for the value of the property at the time of the unlawful taking or detention, with interest thereon, as damages for such taking and detention.*"

In *Taylor v. Hodges,* 105 N. C., 349, it is said that " section 324 of *The Code,* as amended by chapter 50, Laws of 1885,

prescribes a form of replevin bond peculiarly adapted to those cases where the title to specific personal property (such as horses) is the only question at issue, *and the full value of the property is the just alternative allowance as damages when the property is not delivered.*"   Section 326, as amended by section 2 of the same act, requires that the bond of the defendant, when he retains possession of the property, shall, in case of a judgment adverse to defendant's claim, secure to the plaintiff the delivery or the value of the property at the time of the wrongful taking or detention, instead of the value "at the time of seizure" under the warrant as is provided in the bond prescribed for the plaintiff.   It is manifest that the Legislature did not intend to give to either plaintiff or defendant, who might prevail in the action, double damage, interest on the amount of money invested in the property wrongfully detained, and at the same time additional compensation for deterioration and detention. But where the property is unjustly withheld by either, and subsequently returned under the decree of the Court, compensation is allowed, not only for detention but for deterioration, because the full measure of justice could not be meted out in any other way.   Before the passage of the amendatory act the value was assessed, as in the old action of replevin, at the time of the trial instead of that of seizure by the officer or the wrongful taking or detention, but in both *Holmes* v. *Godwin,* 69 N. C., 467, and *Miller* v. *Hahn,* 84 N. C., 226, the Court declared that " where the property had been destroyed so that it could not be returned in specie, the jury would be justified in so finding and giving the value of the property at the time of the taking and interest thereon as the damages for taking and detention.   Now where a return of the specific article to the plaintiff cannot be enforced, the value is assessed as of the time of the tortious taking or the wrongful detention by the defendant, and he is required to pay interest by the terms of the act

"as damages" both for taking and detention from that time, as would have been the rule if the plaintiff had brought trover under the old, or had declared in his complaint simply for the wrongful conversion under the new practice. The property in this case having been sold under a judgment of the Court in the cause and placed beyond the reach of the law, the question of damage resulting from deterioration and detention was no longer a living issue. That judgment, rendered in 1886, is now *res judicata*. A new trial was granted on appeal from a subsequent judgment in order to have "a finding upon at least one of the remaining issues" suggested on the former trial. *Hall* v. *Tillman*, 103 N. C., 281. The one remaining issue upon which it was essential for the plaintiff's interest to have a finding before the case could be disposed of, was that involving the value at the time of the wrongful detention. As the specific machinery cannot be now returned, and the money realized from a sale of it has been paid into Court, the question of just compensation to the owner for being compelled to take back his property, deteriorated in value since he parted with it, does not arise. In providing that the plaintiff shall have interest from the time of the taking or detention, in lieu of damage, the statute but reaffirms a principle upon which the Court might have acted under similar circumstances before its passage. *Holmes* v. *Godwin* and *Miller* v. *Hahn*, *supra*. Where the property could not be returned, and the Court was bound to take cognizance of the fact, as in the case at bar, it was error to instruct the jury that a fair rental value of the property was the true measure of damage instead of the interest from the time of wrongful detention, as it was to submit the issue offered by the plaintiff involving the question of damage by deterioration and detention. The Court could have proceeded to judgment as to the amount due plaintiff for the detention upon a finding of the value of property when the defendants wrongfully detained

it, because the law prescribes that interest on said sum from that time shall be the damage. But in a case like that at bar, where a purchaser makes default in paying the purchase-money for personal property, the title to which is still in the original owner, either by reconveyance or reservation at the time of the sale, the jury should ascertain the value when the purchaser acquired possession, because his refusal to meet the payments and perform the conditions attaching to the purchase place him, in contemplation of law, in the same position as if the original taking had been wrongful instead of permissive. If the Court had directed the jury to find the value of the mill and engine when delivered to the defendants, the Court could have proceeded to judgment upon that finding by allowing interest on that sum, as damage, unless it appeared also that there was a stipulated price agreed upon between the parties for the property, a part of which had been actually paid. Claiming the right to show such contract and payment, the defendants excepted to the ruling of the Court in withdrawing from the jury evidence that had been admitted and which tended to show that the defendants had previously paid to the plaintiff $200, a part of the purchase-price of the machinery seized, while it was still in the hands of the defendants as purchasers, and before the seizure and subsequent replevying by defendants. The defendants set up the defence in their answer that they had bought the portable saw-mill and engine from the plaintiff, had agreed to pay him $800, and had actually paid, after the original contract of sale, and before the seizure, $200. It seems that the defendants on the former appeal insisted that the Court could not proceed to judgment upon the simple finding that the plaintiff was the owner and entitled to the possession of the mill and engine in controversy, when it appeared of record that they had been converted into money by virtue of an order in the cause. When Justice DAVIS said for the Court, that there was " at least one " issue remain-

ing to be tried, he evidently adverted to the possibility that the defendants might insist, on the new trial awarded, upon their claim to a credit upon the value of the machinery for the payment of $200. Where in selling property the owner reserves title in himself till the purchase-money is paid, or takes a reconveyance by mortgage deed to himself from the purchaser to secure his debt, though he has a right to demand possession on default in the payment of the price or on breach of the conditions of the mortgage, the defendants and his sureties upon a final adjustment of their liabilities may justly demand that the jury shall find what was the price agreed upon between the parties for the property, and what sum had been actually paid. *Taylor* v. *Hodges, supra.* "There are torts and contracts, just as there used to be, but there are not several forms of action. * * * It is the transaction that is investigated without regard to its form or name." *Walsh* v. *Hall,* 66 N. C., 233; *Wilson* v. *Hughes,* 94 N. C., 182. If there was no testimony upon which the actual amount of purchase-money due after deducting the payments could be ascertained, then the judgment would depend upon the value at the time of the wrongful taking or detention, which, in a case where there is default in paying the purchase-money, would relate to the taking under the contract not performed, and the plaintiff would recover the penalty of the bond, to be discharged upon the payment of the value of the property so ascertained, and interest from the date of wrongful taking and costs. But if, in addition to the value at the date of wrongful detention or conversion, the jury had found that the original purchase-money was $800, with interest from a specified date, and that at a period subsequent to the sale, and before the action was brought, the defendants had paid $200, then the true amount of the debt due could be ascertained by allowing such credit. In that event the judgment should have been for the recovery of the penalty of the bond, to be discharged on the payment of the balance actually due

on the debt, with interest from the first day of the term, and costs of action. *Taylor* v. *Hodges, supra.* So that if the jury had been allowed to ascertain the value at the time of the original taking, the plaintiff would, if no payment had been made on the stipulated price, have been entitled to recover on the bond, to be discharged on payment of the value, with interest from that time, but if in addition they had found that $200 had been paid on the original contract, then the plaintiff should have had judgment for the penalty, to be discharged on payment of the balance actually still due. So that, by this interpretation of the statutes and constructions placed upon them, a fair and equitable adjustment between the parties can be effected. Where the purchaser uses the property and makes no payment at all, the taking is treated just as if it had been tortious from the beginning. Where he pays a part of the purchase-money, but fails to discharge the whole of the debt, it is treated as a contract, and full credit is allowed for what he has paid, while the original owner looks to the bond to secure the residue with interest.

Under the old practice the plaintiff might have brought an action of detinue or trover and conversion, or he might have sued out a writ of replevin and seized the machinery, but in either action he would have recovered costs, and in the action of replevin the sureties on the defendants' replevin bond would have been liable for costs as incident to the judgment for the property. Under the new practice it was held, up to the passage of the act of 1885, that if the plaintiff, instead of declaring in his complaint for a tortious taking or a wrongful conversion, simply resorted to the ancillary proceeding of claim and delivery, the action would be assimilated to that of replevin, in so far that the value should be estimated as of the time of trial. *Holmes* v. *Godwin, supra.* But we see no reason why the analogy does not hold out so far as to entitle the plaintiff to costs as incident to recovery of the property

withheld.   But our attention is called to the form of the amended statute as bearing directly on this question.   It is true that the language of section 326 of *The Code* is unmistakable in requiring the bond to be conditioned " for the payment of such sum as may for any cause be recovered against the defendant."   We do not think that it was the intention of the Legislature to alter the law in this respect. Besides, this is not like an affidavit for injunction, only an incidental, though an ancillary proceeding, because the matter in controversy is the same as that covered by the condition of the bond, viz., which of the parties has the right to the specific property?   The plaintiff will be entitled to receive, before the bond can be discharged, if he should prevail in the action, not only the value of the property or the balance of the purchase-money, as the case may be, with interest, but the costs as incident to his recovery.   *Slaughter* v. *Winfrey*, 85 N. C., 160; *Long* v. *Walker*, 105 N. C., 96.   The language of the statute is not so explicit as that of the original section of *The Code*, but we think that it is fairly susceptible of the interpretation that the entire costs of prosecuting the action involving the title to the property should be recovered by a plaintiff who prevails against the defendant and the sureties on the bond.   The defendants have not made it appear, so far as we can see, that they are entitled to damages for pulling down a house or removing the machinery.   The plaintiff was entitled to the custody of the property as the jury have found.   He had the right, therefore, under the order of seizure to take and remove it.   If it could not be removed without injury to the shelter placed over it, the plaintiff would not be liable for such injury as was not wanton, but merely incidental to such removal.

Error.