W. O. BLACKNALL v. W. H. ROWLAND et al.

*Action for Deceit—Contract—Sale of Corporate Stock— Representations as to Financial Condition of Corporation and Value of Stock.*

1. Where, in a written contract for the exchange of stock in a corporation for land, the instrument stated that certain representations therein as to the financial condition of the corporation and the value of the stock were the basis of the trade, and opportunity was allowed the purchaser of the stock for investigation as to its value, and subsequently a formal assignment of the stock was made by a writing which contained no representations; *Held*,

   (1.) That the assignment was a part of the same transaction as the agreement for the sale, and was based upon it, and the fact that the assignment contained no representations as to the condition of the corporation or the value of the stock, will not prevent a recovery for the breach of the conditions contained in the contract of sale.

   (2) The fact that the purchaser of the stock had an opportunity to investigate the value of the stock, etc., will not relieve the sellers from liability for the misrepresentations as to such value, etc., for the purchaser was not bound to make such investigations but had the right to rely upon the representations of the sellers.

2. Expressions of opinion as to the value of the subject matter of a trade do not render the seller liable if they are incorrect, unless both falsely and fraudulently made; it is otherwise when the representations are statements of facts of which the seller has peculiar means of knowledge and of which the purchaser is ignorant; hence,

---

---

3. Where, as the basis of a sale of stock, the seller makes representations as to the financial condition of a corporation and the value of the stock therein, such representations constitute a warranty of the truth thereof, and for a breach thereof the seller is liable to the purchaser.

CIVIL ACTION, tried before *Shuford, J.,* and a jury, at January Term, 1894, of DURHAM Superior Court. There was a verdict for the defendant, and from the judgment thereon plaintiff appealed. The facts appear in the opinion of Associate Justice MONTGOMERY :

*Mr. J. S. Manning,* for plaintiff (appellant).
*Messrs. J. W. Graham* and *Boone & Boone,* for defendants.

MONTGOMERY, J.: On the fourth of October, 1888, the plaintiff and the defendants entered into an agreement which is in the following words and figures : "W. H. Rowland and W. R. Cooper propose to sell, and W. O. Blacknall agrees to buy the interest of said Rowland & Cooper in fifty shares of the capital stock of the Durham Sash, Door and Blind Manufacturing Co. As the basis of the proposition and acceptance it is represented and understood that said stock is of the par value of $50 a share; that fifty per cent. of the par value of each share has been paid thereon in cash, and twenty-five per cent. of the par value thereof has been paid by a declaration of dividend out of the net profits of the business and operations of the company, so that seventy-five per cent. of the par value of the stock of said company is now legally paid up : that the company owes for machinery $2,000 ; for lumber about $—— and floating debt of $600 to $700. That its assets are available and in good condition and exceed its liabilities by $3,000 : that Rowland and Cooper will be able to legally assign said stock or interest and have the same duly transferred on the

company's books to the said Blacknall. In exchange of said stock or interest said Blacknall is to convey to said Rowland and Cooper and their heirs, by good and sufficient deed in fee simple an unincumbered title to 28 acres of land in Durham county, adjoining T. B. Lyon on the east, N. C. R. R. Co. on the south, W. O. Blacknall on the west, S. J. Hester on the north; it being just east of the 30 acres now under mortgage.

This trade is conditioned upon the representations above as to condition of business and stock of said company and other statements being verified upon examination of its affairs by an expert book-keeper of Blacknall's selection and at his expense, and upon the condition that his title to the land named above is good. Witness the signature of W. H. Rowland and W. R. Cooper and W. O. Blacknall, October 4th, 1888.

Signed $\left\{\begin{array}{l}\text{ROWLAND \& COOPER,}\\ \text{W. O. BLACKNALL.}\end{array}\right.$

Test: E. J. PARRISH.

Two weeks afterwards the defendants assigned and set over to the plaintiff the stock mentioned in the agreement, by a paper writing in these words:

For full value, and with consent of all the stockholders, we assign, set over and convey to W. O. Blacknall and his executors, administrators and assigns all our right, title and interest in and to fifty shares of stock in The Durham Sash, Door and Blind Manufacturing Company, and in the property, assets, franchises and effects of said company: And we hereby authorize a transfer upon the books of said company of all our said interests to said W. O. Blacknall, and we hereby assign the annexed receipts for payments upon said stock and our subscription thereto. Said receipts show the amounts paid by us on said subscriptions in cash, twenty-five

BLACKNALL v. ROWLAND.

per cent. thereof in addition to cash having been credited to us in dividends declared by said company.

Witness our hands and seals this October 19, 1888.

WM. H. ROWLAND.    [Seal.]

W. R. COOPER.        [Seal.]

Witness:

N. A. RAMSEY.

The plaintiff conveyed the land to the defendants on the same day the stock was assigned to him.

It is contended by the defendants that the two paper writings executed by them have no connection one with the other, that the latter one constitutes in itself the sale of the stock, independent of the agreement, and being without representations or warranty the doctrine of *caveat emptor* applies. We do not take this view of the matter. The writing last executed by the defendants is not the whole of the transaction between the parties. It is simply the assignment of the stock under the agreement; was made, as an inference of law, under it, and had for its basis that instrument. But, even if it is admitted that the assignment of the stock be the paper which passes title to the property and the principal instrument in the sale, yet the agreement would be a collateral undertaking and form a part of the contract by its express terms, as set forth in these words:

"W. H. Rowland and W. R. Cooper propose to sell, and W. O. Blacknall agrees to buy the interest of said Rowland and Cooper in 50 shares of the capital stock of The Durham Sash, Door and Blind Manufacturing Company. *As the basis of the proposition and acceptance it is represented and understood that said stock is, &c.*" The defendants further contend that whatever legal effect the agreement might have had when it was entered into, the opportunity which the plaintiff

had in the interim between the agreement and the assignment of the stock to examine into the representations and statements made in the agreement, relieves the defendants of any liability which might have attached originally to them on account of such representations. We are not of this opinion. The plaintiff was not bound to make any examination into the *facts* stated in the agreement; he had a right to rely upon them. When this case was before this Court at February Term, 1891 (Reported in 108 N. C., 554), Chief Justice MERRIMON, in delivering the opinion, said on this point: "He (plaintiff) was not bound to verify the representations made: he might as a matter of caution have done so, but he might not reasonably believe, rely and act upon the plain, pertinent and material statements made by the defendants to him in the paper writing and otherwise."

We will now consider the nature and legal effect of the agreement. If the representations are only expressions of opinion, then, to enable the plaintiff to recover, they must not only be false but fraudulent; not so, however, with representations as facts. Are these representations merely expressions of opinion offered as inducements to the plaintiff to bring about the trade, or are they solemn statements of fact of which the defendants had peculiar means of knowledge and of which the plaintiff was ignorant? These statements, as to the value of the stock, indebtedness of the company and its assets, are not only specifically set out, but they are preceded by the words "as *the basis of the proposition and acceptance it is represented and understood*, &c." This is no " trade-talk," no "puffing of one's wares." They must mean that the defendants intended to say that they would make good to the plaintiff any damage he might sustain in the trade, if they turned out to be not true. There

is therefore in the agreement a warranty of the facts stated therein as being true.

His Honor below instructed the jury that the agreement of October 4, 1892, was not a warranty. We are of the opinion that there was error in the instruction given. The plaintiff is entitled to a new trial.

New Trial.