## MAY v. LOOMIS.

(Filed December 15, 1905).

*Contracts—Fraud and Deceit—Caveat Emptor—Artifice of Seller—Statements of Fact—Opinion—Fraudulent Sales —Election of Remedies—Rescission—Damages—Counterclaim.*

1. In an action by plaintiff to recover on notes given in part payment of the purchase of a saw mill plant and certain standing timber, where the evidence on the part of the defendants tended to show that at the time of the trade, and as an inducement thereto, the plaintiff stated that there were three million feet of merchantable timber ascertained by two careful estimates; that the machinery was practically new, having been in use only six months and was in good condition; that as a matter of fact there was only about one million feet of timber, and this was well known to the plaintiff at the time, having been ascertained by him by estimates previously made and was unknown to the defendants, who relied upon the positive assurance and statements of the plaintiff as to the quantity of timber; that the machinery was old, and that the boilers were worn out when brought there the year before, *held,* that the court below erred in dismissing the defendants' counterclaim for damages for fraud.

2. The principle, that false representations as to material facts knowingly and wilfully made as an inducement to the contract and by which the same was effected, reasonably relied upon by the other party and causing pecuniary damage and constituting an actionable wrong, applies to contracts and sales of both real and personal property.

MAY v. LOOMIS.

3. Where the parties were not at arm's length with reference to false representations and did not have equal opportunity of informing themselves, the buyers' claim for relief for fraud is not barred on the ground that they were negligent.

4. In no case can a person escape responsibility for representations on the ground that the other party was negligent in relying on them, if, in addition to making the representations, he resorted to artifice which was reasonably calculated to induce the other party to forego making inquiry.

5. Where the plaintiff, knowing that the only one of the defendants whose experience qualified him to make an examination of the property with any intelligence, was physically unable to do so, assured the defendants that he had caused the timber to be carefully estimated and that such estimates showed there were three million feet of hard wood timber, whereas, in fact the knowledge furnished to the plaintiff by these estimates showed only one milliion feet on the same, held, that these representations were not mere matters of opinion, but purported to be statements of fact and were so intended and accepted by the parties.

6. Where a sale has been effected by an actionable fraud, the purchaser has an election of remedies. He may ordinarily, at least at the outset, rescind the trade, in which case he can recover the purchase price or any portion of it that he may have paid, or avail himself of the facts as a defense in bar of recovery of the purchase price or any part of it which remains unpaid, or he may hold the other party to the contract and sue him to recover the damages he has sustained in consequence of the fraud.

7. In order to rescind, the party injured must act promptly and within a reasonable time after the discovery of the fraud, or after he should have discovered it by due diligence; and he is not allowed to rescind in part and affirm in part; he must do one or the other.

8. As a general rule, a party is not allowed to rescind where he is not in a position to put the other in statu quo by restoring the consideration passed; or, if after discovering the fraud, the injured party voluntarily does some act in recognition of the contract, his power to rescind is then at an end.

9. Where the defendants have made payments in recognition of the contract and have continued to manufacture and sell the lumber after knowledge of the fraud and are not in a position to restore the consideration, they cannot rescind the trade and plead fraud in bar of recovery on the notes, but they can set up the fraud by way of counterclaim and recover for the damages suffered.

10. The sale having been ratified, the plaintiff can maintain an action on the notes, subject to any counterclaim the defendants may have.

ACTION by Frank May against G. C. Loomis and C. N. Dotson, heard by *Judge G. S. Ferguson* and a jury, at the July Term, 1905, of the Superior Court of HAYWOOD.

The plaintiff declared on two notes, each for $750, bearing date December 13, 1902, due respectively nine and twelve months after date. The notes were drawn by defendant Loomis to defendant Dotson and endorsed to plaintiff before maturity.

The defendants answered, admitting the execution and endorsement of the notes, and alleging that the same were executed in part payment of the purchase of a saw mill plant and the standing timber on two tracts of land situated in Haywood County, one of 250 and the other of 750 acres; that said sale was effected and the notes were procured by false and fraudulent representations on the part of the plaintiff and his partner, one W. H. Cole, who were vendors in the sale, and setting up such fraud in bar of any liability on the notes. There was further answer setting up the alleged fraud and deceit by way of counterclaim, which is in part as follows: 1. That on December 13, 1902, the defendant bought three million feet of merchantable hardwood timber from the plaintiff and W. H. Cole, trading under the firm name of May & Cole, at the rate of $1 per 1,000 feet, on a tract of land on Pigeon River, in Haywood County, and also at said date, in connection with the purchase of said timber, bought of the plaintiff and his said co-partner the steam saw mill, boilers and engine located on said premises, valued at $2,500, and likewise horses, mules and wagons, valued at $500. 2. That at the time of making said sale and pending negotiations for the same, the said May & Cole represented that this was a picked tract of timber land which the said W. H. Cole had specially selected out of a large tract of land

MAY *v.* LOOMIS.

belonging to Crary, Young & Co., and that they had made two careful estimates of the merchantable hardwood timber thereon—one by W. H. Cole individually, and the other by May & Cole—resulting in 3,000,000 feet, and that they guaranteed that there was 3,000,000 feet of merchantable timber thereon—1,000,000 feet of poplar, 1,000,000 feet of chestnut and 1,000,000 feet of oak, lynn and other merchantable hardwood outside of spruce and hemlock, which were not considered in the contract; and the defendants, relying on the representations and guarantee of May & Cole as to the quantity and kind of timber, which were knowingly false and fraudulent, and a material inducement to the contract, purchased the said 3,000,000 feet of timber at the rate of $1 per 1,000 feet, for the sum of $3,000, and at said time, relying upon the said false and fraudulent representations, intending to deceive, and which did deceive the defendants, were induced to execute the notes set out in the complaint together with other notes, and have paid off all of the said notes, except the aforesaid, when in truth and in fact there was only 464,728 feet of poplar on said boundary of land, 208,377 feet of chestnut and 240,121 feet of oak, lynn and all other timber, considered in said contract and guarantee; and the plaintiff, both as an individual and member of the firm of May & Cole, is due the defendants the sum of $2,036.77 as shortage on the 3,000,000 feet of timber purchased as aforesaid, as damages. There was further allegation of similar import as to false and fraudulent representations in regard to the other property, machinery, etc., conveyed. The plaintiff replied, denying all charges of fraud and deceit.

The defendants in apt time tendered issues addressed to each phase of their defense, and on refusal to submit them excepted and requested His Honor to settle the issues deemed by him pertinent and raised by the pleadings.

There was evidence on the part of the defendants tending

to show that at the time of the trade and as an inducement thereto, both the plaintiff and his partner stated that there were 3,000,000 feet of merchantable hardwood timber on the two tracts of land, ascertained by two careful estimates made at different times, and that the same had been picked out of 20,000 acres as 1,000 acres of choice timber land; that the machinery and other property used in connection with the same were practically new, having been in use only six months and were in good condition; that as a matter of fact there was only about 1,000,000 feet of hardwood timber on the land, and this was well known to the plaintiff at the time, having been ascertained by them by the estimates previously made, and to which the plaintiff referred, and was unknown to the defendants, who relied on the positive assurance and statements of the plaintiff as to the quantity of timber; that the machinery was old and worn and the boilers had many patches on the inside and were old worn-out boilers when brought there the year before, and so defective that they had to be immediately removed as being dangerous, and replaced at an additional cost to the defendants of something like $600.

A witness by the name of William Quiett testified, among other things, "that about a week before the trade, Cole came to the witness and asked him how much timber was on the boundary; that the witness told him there was 1,000,000 or 1,100,000 feet, and Cole replied that he thought there were 2,000,000 or 3,000,000 feet. Cole then said not to say anything about the estimate which had been made of the timber; that he had a chance of a sale and it might interfere with his deal."

There was also testimony to the effect that the defendant Loomis was without any experience in milling or stumpage, and Dotson alone, of defendant firm, had any knowledge or experience in estimating timber or manufacturing it; and that just prior to the trade and when negotiating thereon the parties went out to the land to take a look over it, when

Dotson, who had consumption and was very weak, gave out and was unable to proceed, and that Loomis was taken by one of the plaintiffs through a small portion of the smaller tract (was gone about 15 or 20 minutes) and when they returned to Dotson, who had built a fire and was resting by the roadside, Cole said: "I will guarantee 1,000,000 feet of poplar, 1,000,000 feet of chestnut and 1,000,000 feet of oak and other kinds of hardwood, sufficient to make up another million feet; that he and May had the timber estimated when they made the deal together, and also had it carefully estimated afterwards;" and during the negotiation Dotson said: "I have been physically unable to look over this property at all, and we have not seen the horses and mules and do not know the value of the machinery you are offering us, and so far as the timber on the land is concerned, we have simply to take your representations and guarantees about that; we believe you gentlemen are honest business men and if you will guarantee it to be as you have represented it, we will close the deal." This was given—Cole saying it was even better than represented.

When asked if the defendants relied on these statements as an inducement to the trade, they answered "yes," and Dotson testified further: "We had nothing else to rely on. I was unable to go over the land and they both knew it. I stated to them that Loomis was not competent or capable of estimating timber. May and Cole both guaranteed it to be as represented by them."

The defendants also offered to prove that during the bargaining, Cole advised Dotson to say nothing to people up there about the property, as they were quite peculiar and did not like for strangers to come in their country. On objection this evidence was held incompetent and the defendants excepted.

There was also evidence tending to show damage to the defendants by reason of the fraud and deceit to the amount

of several thousand dollars. At the close of the testimony His Honor declined to submit the issues of the defendant's counterclaim, dismissed the same as on judgment of nonsuit and gave judgment against the defendants on the notes. The defendants excepted and appealed.

*Norwood & Norwood* for the plaintiff.
*S. C. Welsh* and *R. D. Gilmer* for the defendants.

HOKE, J., after stating the facts: Accepting the testimony favoring defendants' claim as true, and we are required so to accept it where a nonsuit is directed against the party who offers it, the facts disclose a clear case of deliberate fraud in which there appears every element of an actionable wrong—false representations as to material facts knowingly and wilfully made as an inducement to the contract, and by which the same was effected, reasonably relied upon by the other party and causing pecuniary damage.

It is well established that the principle applies to contracts and sales of both real and personal property. The authorities are decisive and are against the ruling of the judge below as to the defendant's counterclaim. *Walsh v. Hall,* 66 N. C., 233; *Houghtalling v. Knight,* 85 N. C., 17. *Lunn v. Shermer,* 93 N. C., 165; *Ramsey v. Wallace,* 100 N. C., 75; *Brotherton v. Reynolds,* 164 Pa. St., 134.

It is urged that the buyers in this case were negligent and on that account their claim for relief is barred; but not so. The parties were not at arm's length in reference to these representations and did not have equal opportunities of informing themselves. The only one of the defendants who had any experience in such matters essayed to make an examination of the property, but broke down from weakness incident to his disease, and told the plaintiffs he would have to rely on their statements. Further, there was evidence tending to show artifice used to induce the buyers to forbear making

inquiry about the matter. In 14 Am. & Eng. Enc. (2 Ed.), 123, we find it stated: "In no case can a person escape responsibility for representations on the ground that the other party was negligent in relying on them, if, in addition to making the representations, he resorted to artifice which was reasonably calculated to induce the other party to forego making inquiry." Our decisions are to like effect. *Walsh v. Hall, supra; Hill v. Brower,* 76 N. C., 124; *Blacknall v. Rowland;* 108 N. C., 554; s. c., 116 N. C., 389.

Again, it is contended that these representations were not as to facts, but were mere matters of opinion, and we are cited to a number of authorities as supporting the plaintiff's position—*Fagan v. Newson,* 12 N. C., 20; *Saunders v. Hatterman,* 24 N. C., 32; *Lytle v. Bird,* 48 N. C., 222; *Credle v. Swindell,* 63 N. C., 305; *Etheridge v. Vernoy,* 70 N. C., 724, and some others.

As stated in *Cash Register Co. v. Townsend,* 137 N. C., 652: "Expressions of commendation or opinion or extravagant statements as to value or prospects, or the like, are not regarded as fraudulent in law;" but these representations in the case before us were not of that character; they were not mere matters of opinion, but purported to be statements of fact and were so intended and accepted by the parties.

Knowing that the only one of the defendants whose experience qualified him to make an examination of the property with any intelligence, was physically unable to do so, the plaintiffs assured the defendants that they had caused the timber on the land to be carefully estimated, and such estimate showed that there were 3,000,000 feet of hardwood timber on the tract; whereas, in fact and truth, the knowledge furnished to the plaintiffs by those estimates showed only 1,000,000 feet on the same. Even where there is doubt on the question, the matter must be referred to the jury to determine whether representations, though expressed in the form of opinion, were given and reasonably relied on

as material facts inducing the trade. And the authorities cited do not support the plaintiffs on the facts of the case before us.

In *Fagan's case, supra,* the complaining party had refused his deed because the boundaries did not include two acres of meadow land which had been pointed out to him as being part of the land bargained for. Recovery was denied, the principal opinion being based on the fact that these two acres were at the time in adverse possession of third persons, and this was sufficient to put the purchaser on inquiry; and one judge concurring, rested his opinion on the ground that the complaining party having refused the deed, no title passed, and an action for deceit would not lie simply for the loss of a good bargain.

In *Saunders' case, supra,* the court denied relief because the representations were simply matters of opinion as to value, both parties having equal opportunities to ascertain the truth by the exercise of reasonable care.

In *Vernoy's case, supra,* there was no claim or evidence tending to show actual fraud, and this opinion intimates that, in case of actual fraud, the doctrine of *caveat emptor* does not apply as was said by the same judge writing the opinion in *Hill v. Brower, supra.*

The only cases which give support to the plaintiffs' position are those of *Lytle v. Bird* and *Credle v. Swindell, supra,* in both of which it was expressly held that an action for deceit would lie in no case, on the sale of land for fraudulent representation as to the quantity sold or what particular land was included in the deed; and this on the ground that the parties should inform themselves by a survey. These two cases are contrary to the trend of modern decisions; were expressly disapproved as to the point for which they are now cited, in the case of *Walsh v. Hall, supra,* and have since been ignored as authority.

Where a sale has been effected by an actionable fraud, the

purchaser has an election of remedies. He may ordinarily, at least at the outset, rescind the trade, in which case he can recover the purchase price or any portion of it he may have paid, or avail himself of the facts as a defense in bar of recovery of the purchase price or any part of it which remains unpaid, or he may hold the other party to the contract and sue him to recover the damages he has sustained in consequence of the fraud.

In order to rescind, however, the party injured must act promptly and within a reasonable time after the discovery of the fraud, or after he should have discovered it by due diligence; and he is not allowed to rescind in part and affirm in part; he must do one or the other. And, as a general rule, a party is not allowed to rescind where he is not in a position to put the other in *statu quo* by restoring the consideration passed. Furthermore, if, after discovering the fraud, the injured party voluntarily does some act in recognition of the contract, his power to rescind is then at an end. These principles will be found in accord with the authorities. Bishop on Contracts, secs. 679, 688; Beach on Contracts, sec. 812; Page on Contracts, secs. 137, 139; Clark on Contracts, pp. 236, 237; *Trust Co. v. Auten,* 68 Ark., 299; *Parker v. Marquis,* 64 Mo., 38.

Applying these principles to the facts before us, the defendants could not now rescind the trade and plead the fraud in bar of recovery on the notes. They have made payments in recognition of the contract; they have manufactured and sold the timber, and are not in a position to restore the consideration. They contracted to manufacture and sell the timber on the land, according to the evidence, not long after the trade, and their explanation seems satisfactory. They had put out large sums of money on the enterprise; and the witness Loomis states that he complained of the fraud before the note was due, but went on and cut the timber as the best and only thing to do to save themselves.

MAY *v.* LOOMIS.

The fact, however, that they are not now in a position to rescind the trade and plead the fraud in bar of recovery on the notes, does not prevent them from setting up the fraud by way of counterclaim and recovering for the damages suffered. This may be done, though the defendants have made payments in recognition of the contract, and may have continued to manufacture and sell the lumber after knowledge of the fraud. *Trust Co. v. Auten* and *Parker v. Marquis, supra.*

The damages usually being the difference between the value of the property sold as it was and as it would have been if it had come up to the representations. The sale having been ratified, the plaintiff can maintain an action on the notes, subject to any counterclaim the defendants may have against the plaintiff, to be determined under the law as here declared and on the facts as they may be established.

There is error. The judgment will be set aside and a new trial awarded.

New Trial.