Pearson,
 
 J.
 

 It is established by the verdict, that the representations made by Melson, in regard to the property, were false, and he knew them to be so: and, that although Williams did not at the time know them to be false, yet, by moans of these falsehoods, he and Melson were enabled to sell the property to the plaintiff for greatly more than it was worth: and the point in the case was, after Williams found out that the plaintiff had been cheated, could he retain the part of 'the spoils that had fallen to his lot, in the -division with Melson, 'without becoming, in contemplation of law, also liable for the fraud that had been practiced — atleast to the extent of his rateable part of the damage — so as to make the difference between the two consist in this: that the •perpetrator was liable for the whole, the other to the extent of his participation in the spoils ? •
 

 
 *148
 
 His -Honor misconceived the case, and made it turn upon the point that there was no evidence that Williams had appointed hjelson his agent to sell the property: Whereas, there was pregnant proof that he had made him his agent, to assist irán in making the sale, by referring to him as one who was well acquainted with the property, and could 'give all necessary information in regard to it. The witness Fagan swore ' that he had told him, that he brought Melson with him to tell the condition of the property, and all the witnesses concur in saying that he referred the plaintiff to Melson, who would answer all inquiries, and it is evident, that the plaintiff was induced to rely upon .the information thus received, and close the treaty.
 

 It can make no sort of difference, whether he was his agent to do the whole business connected with the sale, or only to do a part of it. If you, having a horse to sell, get one man to ride him up and down the street, to show his parts, and another to act as auctioneer to see udio will give the most for him, and another to act as clerk and set down the bid, they are all your agents, as to the parts assigned to them, '(they act for you and in your stead, which is the true definition of an agent), although you reserve to yourself the part of receiving the money, and making a bill of sale, and of delivering the article to the purchaser. So, if you advertise a tract of land, and refer persons who may wish to buy, to A B, who is well acquainted with the land, and will go upon it with them and she-wthe boundaries, &c., does it need the authority of decided -cases to show that he is your agent, and that if he makes a wilful misrepresentation, and points out land as belonging to the tract, which, in fact, it does not include, and thereby enables you to sell it at an.extravagant price, that you can, after notice of the fraud, which he has practiced, insist upon keeping .the whole price, and take the benefit of his falsehood, without .being guilty of a fraud, as we)l hi !a,w as ip morals.? Ban a
 
 *149
 
 man, lawfully, do that by another which he cannot do himself
 
 l
 
 Just as soon as you showed a disposition to hold on to your ill-gotten gains, every honest man would exclaim, “you are just as guilty of a fraud as the vile instrument you made use of.”
 

 This plain principle of law and common honesty is appa-parently conceded by his Honor, and the error is in putting the case on a supposed distinction between an agency to sell out and out, and an agency to do some part only of what is necessary to affect a- sale. We find no such distinction in the books, and the principle is settled generally, that a vendor is bound' for the fraud, of' his agent, in- effecting a sale: in fact, the principle is settled as to all agencies. Comfort v. Fowke, Meeson and Welsby, 373. Although the Judges, differ in opinion as to the point in the cáse before them, tney all take it as settled law, that a principal is bound for the fraud of his agent. Park B. says: “ I concede that, if one employ another to make a contract, and that agent, though the principal be
 
 perfectly guiltless,
 
 knowingly commit a fraud in making it, not only is the contract void, but the principal is liable to an action.” Lord Abinger, C.B., who dissented, says: “ I own it never occurred to me, to doubt, upon principié, or upon the authority of decided cases, that the knowledge of; the principal was the knowledge of the agent, and the. knowledge of the agent the knowledge of the principal.”
 

 There is one case so fully in point with the. present, that, although unnecessary, we are tempted to cite it.. Maynard v. Rhode, 11 Eng. C. L. R. 419. Plaintiff had effected an insurance upon the life of Col. Lyon, of whom the- plaintiff was ah annuity creditor. In making the insurance, the plaintiff referred the companyto Col. Lyon for information as to his health: the Colonel did not make a true statement. The Court say, however hard it may be on the plaintiff, the rules of law must be adhered to: so that,
 
 *150
 
 though entirely innocent, he lost the benefit of the policy, on account of the misrepresentation of the Colonel, to whom he had referred the company for information.
 

 Allusion was made, upon the argument, to the fact, that Williams sold under a power given to him as executor. That does not vary the case. We presume that, in settling with his
 
 cestui que
 
 trust, he will only be charged with the real value of the property; but, be that as it may, he was not at liberty to commit a fraud in law, for his own benefit or for that of others.
 

 It is only necessary to say that the variances pointed out by the plaintiff are immaterial.
 

 The plaintiff is entitled to a
 
 venire de novo,
 
 as to the defendant Williams. He does not ask one as to Melson, who did not appeal.
 

 Judgment reversed-