## MAHONEY v. TYLER.

(Filed September 20, 1904).

1. ATTACHMENT—*Domicile.*

  That a person leaves the state to seek work, for the purpose of prospecting with a view to change his residence, if desirable, does not sustain an attachment on the ground that the defendant was a non-resident.

2. ATTACHMENT—*Damages—The Code, secs. 356, 302, 341, 360, 372, 373—Actions—Bonds.*

  The successful defendant in attachment must seek relief for damages in a separate action on the undertaking.

3. ATTACHMENT—*Damages—Sheriffs.*

  An attaching creditor is not liable on his bond for the failure of the sheriff to perform his duty relative to the attached property.

ACTION by J. Mahoney and others against P. C. Tyler, heard by *Judge W. B. Council* and a jury, at February

Term, 1904, of the Superior Court of BERTIE County. From a judgment for the defendant the plaintiff appealed.

*J. B. Martin* and *Day & Bell,* for the plaintiffs.
*Francis D. Winston,* for the defendant.

WALKER, J. The plaintiff brought this action to recover a debt, and caused a warrant of attachment to be issued, upon the ground that the defendant was at the time a non-resident. There was a motion to vacate the attachment which had been levied on the defendant's property, and, upon the affidavits filed by the respective parties, *Judge Cooke* found as facts that the defendant went to South Carolina in July, 1903, to procure some profitable employment until his crops should mature, intending to return and harvest his crops. He had the "further purpose of prospecting with a view to a change of his residence if the field should appear satisfactory. His wife and children remained at their home in this State. The defendant returned to his home on September 11, 1903, for the purpose of harvesting his crops, and has remained there ever since." Upon this finding the Judge concluded that the defendant was still a resident of this State, and at November Term, 1903, vacated the attachment. The ruling, in our opinion, was correct. The cases of *Wheeler v. Cobb,* 75 N. C., 21, and *Carden v. Carden,* 107 N. C., 214, 22 Am. St. Rep., 876, which were cited by the plaintiff's counsel, are not in point. In each of those cases it was found as a fact that the defendant had voluntarily left this State with the intent and purpose of residing in another State as the incumbent of a public office, the term of which was of indefinite duration. Not so in this case, in which it appears that the defendant never abandoned his residence here, but went to South Carolina with the intention of remaining for a definite time, unless he decided, after he arrived there and "looked

over the field," to remain, which he never did, but returned to this State. We think both of the cases cited sustain the ruling of the Court.

With the intendment of the attachment law, there was no "cessation to dwell within this State for an uncertain period, without definite intention as to a time for returning, although a general intention to return may have existed," so as to constitute non-residence. *Carden v. Carden, supra; Weitkamp v. Loehr,* 53 N. Y. Sup. Ct., 83.

In the order vacating the attachment there is this provision: "This cause is retained for further order in respect of the right of the defendant to an accounting for the property seized in said attachment proceedings." At the same term this order was made, a judgment was entered in favor of the plaintiff for the amount of his debt and costs.

At February Term, 1904, the Court submitted an issue to the jury, at the request of the defendant, to ascertain what damages the defendant had sustained by reason of the attachment, the Court holding that the defendant was entitled to have his damages assessed in this action, and, besides, that such an assessment had been ordered by *Judge Cooke* when he retained the cause. We do not think the order of *Judge Cooke* referred to such an assessment of damages as was made in this case and which was based solely upon the value of the property seized under the attachment; nor do we think the learned Judge contemplated any assessment at all, but simply an "accounting for the property seized"—that is, a return of the same as provided by the statute. If he intended more than this he was without jurisdiction to make the order, as the Court was without any jurisdiction to proceed afterwards in the manner it did to assess damages and charge the plaintiffs with the value of the property levied upon.

In the first place, "all damages which the plaintiffs may sustain by reason of the attachment," and which are secured

by their undertaking, must be assessed and recovered in a civil action upon the undertaking. 1 Shinn on Attachment and Garnishment, 182. There is no provision in The Code for the assessment of damages in the original action, and section 356 clearly implies that the successful defendant must seek relief in a separate action on the undertaking. It is argued that there is no judgment on the undertaking in this case, but only a judgment against the plaintiffs. That being true, it follows with equal if not greater reason that the defendant's remedy is by civil action. as he could recover at common law damages only for wrongfully suing out the attachment, and his suit would be in the nature of an action for malicious prosecution, in which a want of probable cause must be shown in order to sustain the action. *Burnett v. Nicholson,* 79 N. C., 548; *Kirkham v. Coe,* 46 N. C., 423; *Ely v. Davis,* 111 N. C., 24; *Williams v. Hunter,* 10 N. C., 545, 14 Am. Dec., 597; *Falls v. McAfee,* 24 N. C., 236; *Davis v. Gully,* 19 N. C., 360; *Timber Co. v. Rountree,* 122 N. C., 45.

There is no analogy between a proceeding like this and one for the assessment of damages against a defendant where property has been seized under a requisition in claim and delivery (*Hall v. Tillman,* 110 N. C., 220), nor where the defendant has been arrested in a civil action and held to bail (The Code, sec. 302; *Patton v. Gash,* 99 N. C., 280), nor for assessing damages against the plaintiff where an injunction has been issued on his application (The Code, sec. 341; *Timber Co. v. Rountree, supra*), because the latter cases are governed by special statutory provisions. See also *Railroad v. Hardware Co.,* 135 N. C., 73.

By what we have already said we do not mean to imply that if an action is brought on the plaintiff's undertaking it will not be necessary to show that there was not probable cause for issuing the attachment. In some of the cases this

Court seems to intimate that it is necessary to do so, while the language of the statute may be broad enough to give the right to recover all actual damages without reference to the plaintiff's malice or the existence of probable cause. We are not called upon to decide the question at this time, and leave it open for future consideration if it should ever be presented.

The ruling of the Court upon the defendant's right to an assessment of his damages was erroneous for another reason. When an attachment is vacated the law requires that the sheriff shall deliver to the defendant all property attached and remaining in his hands, or the proceeds thereof if it has been sold, and all moneys collected by him. The Code, secs. 372 and 373. The sales of property here mentioned have reference to those made before the attachment is vacated, as, for instance, sales made under the order of the Court, in accordance with section 360 of The Code, when the property is perishable. The sheriff has no right, after the attachment has been vacated, to sell any property seized by him, as it then becomes his duty to deliver at once to the defendant all property in his hands. The Code, sec. 373. This being so, how can the plaintiffs be liable in damages to the defendant for the default of the sheriff in failing to comply with the mandate of the law? If the sheriff fails or refuses to deliver the property, the defendant could perhaps apply to the Court and obtain an order requiring him to do so, or could sue the sheriff and his sureties for the default; but we are unable to see upon what principle the plaintiffs should be liable for the sheriff's neglect. The failure to deliver the property, as required by the statute, is in no sense their default, but solely that of the sheriff. 1 Shinn, *supra*, sec. 395. We have searched in vain to find authority for the ruling of the Court, and counsel did not refer us to any. We are bound, there-

fore, to conclude that the proceeding is one of first impression.

·It might perhaps be more convenient if this summary mode of assessing damages in such cases were adopted, but it must be done by the Legislature and not by the courts. Even if the damages could be thus assessed, they would not include such as the defendant may have sustained by the wrongful action of the sheriff, and the defendant's counsel in his brief admits that "he (defendant) is not seeking any damages growing out of the seizure." It follows, therefore, that when the Court vacated the attachment and taxed the plaintiffs with the costs of the attachment proceedings, and then gave judgment in favor of the plaintiffs for the debt and the costs of the action other than the cost awarded to the defendant, its jurisdiction and power were exhausted. The end of the case had been fully reached and nothing else could be done except perhaps to make an order for the return of the property seized under the attachment to the plaintiffs, if the provision in section 373 is not self-executing (Devries v. Summit, 86 N. C., 126; 1 Shinn, supra, sec. 395), and such an order is necessary. The general practice, we believe, has been to insert such a direction to the sheriff in the order vacating the attachment. Jackson v. Burnett, 119 N. C., 195.

Ordinarily, when there has been error committed in a case wherein judgment has been rendered upon a verdict, we order a new trial, but in this case there would be nothing of which the Court has jurisdiction to try, and for this reason the verdict and judgment in favor of the defendant in the proceeding for the assessment of damages will be set aside and the said proceeding dismissed at the cost of the defendant. The defendant may proceed in other respects to obtain relief, as he may be advised.

Error.