PERCY C. TYLER v. J. AND E. MAHONEY.

(Filed 16 September, 1914.)

1. Attachment—Undertaking—Separate Action.

A successful defendant in attachment must seek relief in a separate action on the undertaking.

2. Attachment—Probable Cause—Damages—Malice.

Where plaintiff in attachment without malice has sued out his writ and seized the property of the defendant without probable cause, he is liable to the defendant in that action in the amount of actual damages he has thereby sustained.

### 3. Same—Res Judicata.

The question of recovery by the plaintiff in this action for damages he has sustained by reason of the defendant's having seized his property in attachment without probable cause is not decided in defendant's appeal in the attachment proceedings, *Mahoney v. Tyler*, 136 N. C., 42, and the defense of *res judicata* is untenable.

### 4. Attachment—Nonresident—Malice—Evidence—Information, Available Knowledge.

Where a person merely leaves the State temporarily for the purpose of prospecting, an attachment against his property here will not lie upon the ground that he was a nonresident; and where he sues the attaching creditor for damages, it is sufficient for him to show as want of probable cause, that the latter acted upon rumor that the plaintiff had changed his place of residence to another State, without asking information from the plaintiff's wife or family, who had remained in the State, or used other available means to ascertain the truth of the rumor he had heard.

### 5. Attachment—Probable Cause—Trials—Questions for Jury—Questions for Court.

In this case it is held that the question of probable cause is a mixed one of law and fact, leaving for the jury to determine from the evidence, as a matter of fact, whether the circumstances show the cause to be probable or not probable; but whether, admitting them to be true, they amount to a probable cause is a question of law for the judge.

APPEAL by plaintiff from *Connor, J.,* at February Term, 1914, of BERTIE.

This is a civil action for damages for wrongfully and illegally attaching the plaintiff's property. The following issues were submitted to the court by the plaintiff and accepted by the defendants, towit:

1. Did the defendants wrongfully, unlawfully, and without probable cause, attach the property of the plaintiff, as alleged in the complaint?

2. If the defendants wrongfully, unlawfully, and without probable cause, attached the property of the plaintiff, as alleged in the complaint, has the plaintiff been damaged thereby?

3. If so damaged, in what sum has he been damaged?

4. In what sum has the plaintiff been damaged by reason of the wasting loss of the property seized under the attachment issued?

The plaintiff stated in open court that he made no claim against the defendant upon his undertaking, and that the only claim made by him was that the attachment was issued without probable cause, and for abuse of process.

At the conclusion of the evidence, his Honor, being of opinion that there was no sufficient evidence of a want of probable cause, sustained the motion to nonsuit. The plaintiff appealed.

*Winston & Matthews for plaintiff.*

*Winborne & Winborne, J. B. Martin, and Murray Allen for defendant.*

BROWN, J. It appears from the evidence in this case that the plaintiff was indebted to the defendant in the Spring of 1903 in the sum of $537. In September of that year the defendant sued out a writ of attachment and levied it upon the plaintiff's crop and other property, which property, it seems, was sold and applied to the defendant's debt.

Upon the return of the writ of attachment before *Cooke, Judge,* the writ was vacated and the property attached ordered to be restored to the defendant in the attachment. The defendant in the attachment, Tyler, moved in the cause for a judgment on the undertaking in the attachment proceedings. Upon appeal to this Court, it was held that the successful defendant in attachment must seek relief for damages in a separate action on the undertaking. *Mahoney v. Tyler,* 136 N. C., 42.

The ground upon which the attachment was sued out was that the defendant therein, Tyler, had left the State and had become a citizen of South Carolina. Upon a hearing of the attachment, the court held that the defendant was still a resident of this State at the time of the levy of the attachment and vacated the same, which ruling was affirmed by this Court. The plaintiff, Tyler, brings this action against the defendant for the value of the property taken and for all damages sustained by reason of the unlawful levy of the attachment.

It is contended by the defendant and set up in the answer that the matter is *res adjudicata* by the decision of this Court above cited, and that the plaintiff, if he has any remedy, should sue the sheriff who levied the attachment.   This position cannot be sustained.   It is apparent, upon reading the opinion of the Court (136 N. C., page 41), that the only matter passed upon was the regularity of the proceedings.

In that opinion the Court, holding that a motion in the cause was not the proper remedy, says: "That being true, it follows, with equal if not greater reason, that the defendant's remedy is· by civil action, as he could recover at common law damages only for wrongfully suing out the attachment, and his suit would be in the nature of an action for malicious prosecution, in which a want of probable cause must be shown in order to sustain the action."

The present action is brought in pursuance of that decision. The liability of one who wrongfully and without probable cause sues out an attachment and levies it upon the property of another is not open to question, and is fully recognized in the opinion of that case.

The allegations of the complaint in this action are:

That the defendants wrongfully and unlawfully sued out and had levied on the said crops an attachment, without having any probable cause therefor, and under which attachment they seized the plaintiff's property as aforesaid and took the same unto their possession through their agent, one Carter.·

That while in the possession of their agent, the said property was damaged, injured, destroyed, wasted, and much of it made way with, to plaintiff's great damage and at least the sum of $500.

That all of defendant's acts in suing out said attachment, in levying the same on said property, in taking possession of the said property, in wasting, damaging, destroying, and injuring the same was wrongful, unlawful, and willful and without probable cause.

We are of opinion that his Honor erred in holding that there is no evidence of a want of probable cause.   The plaintiff is not

proceeding in this case against the sheriff, but against the defendant upon the elementary principles of common law to recover such damages as he sustained for the unlawful seizure and appropriation of his property. *R. R. v. Hardware Co.,* 138 N. C., 175.

Having been deprived of his property by process of law wrongfully and illegally sued out by the defendants, the law would be unjust to itself as well as to the plaintiff if it did not restore to him that of which he has wrongfully been deprived, or monetary damages in lieu thereof. *Perry v. Tupper,* 71 N. C., 386; *Sneeden v. Harris,* 109 N. C., 357; *R. R. v. Hardware Co.,* 135 N. C., 73; *R. R. v. Hardware Co.,* 138 N. C., 175; *R. R. v. Hardware Co.,* 143 N. C., 54.

Taking all the evidence in this case, we are of opinion that in any view of it, if believed by the jury, a want of probable cause is made out. The ground upon which the attachment was issued is that Tyler had left the State and become a citizen of South Carolina. The evidence tends to show that he lived in Kelford, Bertie County, early in 1903; that he gave up his business in Kelford and moved over into Northampton County; that he was cultivating a crop and lived on the Edgar Powell farm in Northampton County.

In July, 1903, the plaintiff had laid by his crop and left his family in North Carolina and went to South Carolina on a temporary visit and remained not quite two months. He testifies that his family did not expect to follow him to South Carolina, his furniture had not been packed for shipment; that he was down there temporarily at the instance of the Atlantic Coast Lumber Company; his family remained in Northampton County. In September he heard that his crop had been attached, and he came back to look after it.

The defendant's evidence tends to prove that the witness Baxter was a clerk of the defendant in Portsmouth, Va.; that he was sent down to look after the debt which the plaintiff owed the defendant. Baxter testifies: "I made inquiry as to the residence of Tyler before the attachment was issued. I went to Kelford and was there informed that he had gone to South Carolina to

166—33

work and make his home; heard this from several men. They told me he had packed up his furniture, and his family was going to join him in South Carolina. I went back to Norfolk and reported to Mr. Mahoney." Baxter further testified: "I did not go to see Mrs. Tyler nor any of Mr. Tyler's relatives to find out if he had moved to South Carolina. I acted on what was told me on the street. I was hot after our money, but did not get it."

Mahoney testifies as to what Baxter reported to him, and that his attorney, Martin, advised him to get out an attachment, as Tyler was a nonresident of this State; that he believed Tyler was a nonresident and had permanently left the State to live in South Carolina.

In *Mahoney v. Tyler, supra,* it is held that a person leaving the State to seek work, for the purpose of prospecting, does not sustain an attachment on the ground that the defendant was a nonresident.

The evidence shows that Baxter, the defendant's agent, made no inquiry in Northampton County, where the defendant's family resided; that he did not go to his residence; that he made no inquiry of persons who were supposed to know anything about the plaintiff; that he does not give the names of the persons who told him in Kelford; that he relied on a mere street rumor, and upon such rumor the defendant and his counsel acted and issued an attachment and practically destroyed the plaintiff's crop. If these facts are true, and the jury should find them to be true, it establishes a want of probable cause, in our opinion.

The question of probable cause in cases like this is a mixed one of law and fact, leaving for the jury to determine from the evidence as a matter of fact whether the circumstances of the case show the cause to be probable or not probable; but whether, supposing them to be true, they amount to a probable cause, is a question of law for the judge. *Wilkinson v. Wilkinson,* 159 N. C., 265.

As is shown in *Mahoney v. Tyler, supra,* it is not necessary to prove actual malice in this case in order to recover substantial damages, but it is necessary to prove a want of probable cause.

The effect of proving malice would be to authorize the jury, in case they saw fit, to award punitive damages. But it is not necessary to consider this question, as punitive damages are disclaimed in specific terms in the brief of the counsel for the plaintiff, wherein it is said:

"No question of punitive damages is raised. It is simply a question of recompensing the plaintiff for property they seized and have not accounted for."

The judgment of nonsuit is set aside and a new trial ordered.

Reversed.