Jes Christensen, Appellant, v. Stillman M. Frankland, Individually and as Administrator of Estate of S. M. Frankland, Deceased, et al., Appellees.

Gen. No. 42,476.

Opinion filed December 13, 1944. Released for publication January 4, 1945.

Guy C. Guerine, of Melrose Park, and McKinley & Price, of Chicago, for appellant; Guy C. Guerine, of Melrose Park, and Paul E. Price, of Chicago of counsel.

Rawlins & Wright, of Chicago, for certain appellee; Chester D. Kern, of Chicago, of counsel.

William A. Sammon, of Chicago, for certain other appellee.

Mr. Justice Lupe delivered the opinion of the court.

This is an action against Stillman M. Frankland individually and as administrator of the estate of S. M. Frankland, deceased, Donald O'Brien, Charles L. Genesen, and the Argo State Bank, a corporation, for actual and punitive damages for breaking into and entering plaintiff's dwelling, evicting plaintiff from his home; destruction of his household goods and property, and for personal injuries sustained by reason of an assault upon him.

Count 1 of plaintiff's complaint alleges in substance that on the 27th day of April 1940, he was in possession of certain goods and effects in his home at 6156 Archer avenue, Argo, Illinois; that the defendant Stillman M. Frankland, individually and as administrator of the estate of S. M. Frankland, deceased, while acting within the scope of his authority as such administrator, together with the defendants Charles L. Genesen, who was acting individually and as agent, servant and employee of the Argo State Bank, a corporation, and acting within the scope of his employment, and Donald O'Brien, with force and arms wilfully, mali-

ciously and unlawfully broke into the dwelling of plaintiff, removed the said property and effects and destroyed and damaged the same.

Count 2 of the complaint charges defendants with having assaulted plaintiff and then and there threatened and placed him in bodily fear; that defendant pointed a gun at plaintiff and forced him out of his home without reasonable or proper cause, and that he thereby became sick, shocked, injured and suffered a stroke, etc., exposing plaintiff to public disgrace, and that the assault was wilful and wanton and against the dignity of the people of the State of Illinois, and claimed damage in the sum of $25,000.

Defendants answered, denying the material allegations of the complaint. The cause was tried by a jury which returned a general verdict on both counts of the complaint against all defendants and assessed plaintiff's damages at $12,000. Judgment was entered on the verdict. Thereafter motions for new trial and judgment notwithstanding the verdict were filed by the defendants and upon hearing the court denied the motions for new trial and sustained the motions of the defendant Argo State Bank, a corporation, and the defendant Stillman M. Frankland individually and as administrator of the estate of S. M. Frankland, deceased, for judgment notwithstanding the verdict, and entered a judgment in their favor and against the plaintiff for costs. Plaintiff prosecutes this appeal.

No point is raised on the pleadings.

The question to be determined is whether or not the court committed error in granting the motions of defendants Stillman M. Frankland individually and as administrator, etc., and Argo State Bank for judgment notwithstanding the verdict. It therefore becomes necessary to review briefly the evidence introduced on the trial.

The record discloses that on April 27, 1940, Jes Christensen, plaintiff, was 69 years of age and resided

with his wife on the second floor of the premises located at 6156 Archer avenue, Argo, Illinois. This was a two-story brick building and on the first floor thereof he and his son Harold conducted a sheet metal shop. Harold, prior to his marriage on November 22, 1936, resided on the premises with his parents. The title to the property was formerly in Harold's name, he having received the same from his mother in 1929. Samuel M. Frankland held a mortgage on the premises upon which he instituted foreclosure proceedings in 1934 and in 1937 received title to the property by virtue of a master's deed. In 1935 Martin Ferenkchak, a teller of defendant Argo State Bank, was appointed receiver in the foreclosure proceedings and as such receiver collected the rents which were paid to him and in his absence to other employees of the bank. All payments of rent were made at the bank in the manner hereinabove set forth. In 1935 the monthly rental was $35 for the entire premises, which rental was increased to $50 per month in 1937 by agreement between plaintiff and his son Harold and Samuel M. Frankland the then owner of the property. The receiver credited all rents collected to the receivership account and in December 1937 was duly discharged as receiver. After the rent was increased in 1937 to $50 per month, plaintiff contributed $20 per month for the use of the second floor of the premises where he and his wife resided, and Harold and plaintiff jointly paid the balance of $30 per month for the use of the shop on the first floor. Since Harold's marriage in 1936 he continuously resided away from the premises, having moved with his wife to La Grange, Illinois. Charles L. Genesen, a defendant herein, was cashier of the Argo State Bank and on February 2, 1940 filed a complaint in forcible detainer against Harold Christensen to recover possession of the property hereinabove described. Genesen was acting as agent for Samuel M. Frankland, the owner of the property, in the institution of said forcible de-

tainer proceedings. The complaint was signed "S. M. Frankland by C. L. Genesen, Agent." The record further discloses that Genesen was not only cashier of the Argo State Bank at the time, but was engaged in the real estate business separate and apart from his duties at the bank, and that his real estate office was located away from the bank. After the forcible detainer suit was instituted and on February 20, 1940, Samuel M. Frankland died.

Genesen testified that he was acting for Samuel M. Frankland and for his estate in said proceedings, and that he was instructed by Samuel M. Frankland in his lifetime to secure possession of the premises, and after the death of Samuel, who died intestate, his son Stillman M. Frankland, also instructed him to secure possession of the premises, and that he, Genesen, was not acting on his own volition.

Stillman M. Frankland testified that he carried on the forcible detainer proceeding through his attorney and that he had given his attorney instructions to take all necessary steps to obtain possession of the property, and that he paid all the costs and expenses in connection therewith. The record further discloses that Genesen and Stillman M. Frankland knew that plaintiff Jes Christensen lived in the property, and that neither he nor Genesen at any time caused any notice or demand for possession to be served upon plaintiff. A judgment was entered in the forcible detainer proceeding for possession and a writ of restitution was duly issued and was delivered to Donald O'Brien, a constable, for service; that plaintiff at no time had been served with any demand or summons or with any writ for possession. O'Brien testified that he never at any time had a writ to dispossess the plaintiff. On April 27, 1940, O'Brien took possession of the property. On that morning between the hours of 8:00 and 9:00 a. m. he went to the premises in question, rang the bell, and knocked on the door. Receiving no re-

sponse, he then went to the Argo State Bank to see Genesen, and together Genesen and he went to see the chief of police and they then returned to the premises with the chief and another officer. Upon their arrival at the property Genesen instructed O'Brien to break the window and gain admittance, which he did. Genesen testified he gave O'Brien no instructions either to take possession of the property or otherwise and the reason that O'Brien came to him that morning at the bank was to ascertain whether or not he could get the chief of police and a uniformed police officer to go with him to the property; that Genesen advised Chief Herzog what O'Brien wanted, and went with the chief in his car to the premises. The evidence further shows that a door was broken in the premises; that about that time someone informed O'Brien that the plaintiff was around the corner, and that he and another man went to talk to plaintiff. This was after the place had been broken into by O'Brien and those that were with him.

Two neighbors testified that O'Brien and another man brought the plaintiff in from an alley and that they were holding him by the arms, that he was attempting to pull away, and that he was requesting of O'Brien to wait until his son Harold had arrived; that it looked as though the plaintiff was trying to get away and that O'Brien and the man with him kept pulling the plaintiff and saying to him that they were not going to hurt him, and that they took plaintiff inside the premises; that at that time plaintiff was trembling, his voice was shaking, and his face was very red, and he looked as though he was sick; that O'Brien and the man with him got to the rear of the premises with plaintiff when O'Brien took a gun out and passed it to the other man and said, "watch him while I go make a phone call"; that after this occurrence the witness went over to the plaintiff and that plaintiff could not speak, that he appeared terribly nervous and ex-

cited. O'Brien denied that he had laid hands upon the plaintiff or that he had in any way threatened the plaintiff with a gun and that no gun was displayed at the time.

Harold Christensen testified that he arrived at the premises around 10:30 of the morning of April 20, 1940, and that there was a great deal of confusion there, a lot of people were milling around, and the shop had been cleaned out and the door of the flat upstairs had been broken; that some of the windows were broken; that he told O'Brien that he, Harold, had nothing to do with the apartment upstairs, and that O'Brien responded that he was under orders to take everything out. Harold further testified that when he came upon his father, his father was in the kitchen, that he was in a dazed condition and that his eyes were watery and that he did not recognize his son, that saliva was running from his father's mouth, and that he was unable to speak; that he took his father to his home and placed him in bed, and that he has been ill from that time on. Harold further testified that many of the tools and much of the equipment of the sheet metal shop had been lost, and that much of his parents' furniture had been damaged and broken.

Dr. Scott testified that in his opinion there was a direct causal connection between the excitation of the hypothetical person (plaintiff) and the instances described in the hypothetical question and the onset of the cerebral hemorrhage; that plaintiff will be unable to do any gainful work; and that his condition will become progressively worse.

Chester J. Alger testified that he became president of Argo State Bank on March 4, 1940, that no one who was employed by the bank had any duty of whatever kind or nature to perform on behalf of the bank pertaining to the property, and that Genesen was not authorized to act for the Argo State Bank in any manner pertaining to the said property.

Plaintiff contends that the injury and damage sustained by him were occasioned by and through the wrongful conduct of defendant Stillman M. Frankland individually and as trustee of the estate of S. M. Frankland, deceased, and Argo State Bank, a corporation, acting by and through their agents and servants in the course of their employment; whereas Stillman M. Frankland individually and as administrator of the estate of S. M. Frankland, deceased, and the Argo State Bank, a corporation, contend that there is no evidence in the record tending to sustain the charges made against them. It is the contention of Stillman M. Frankland, sued individually and as administrator, that the record discloses absolutely no facts whatsoever to justify a verdict against him individually and, secondly, as a matter of law, that the evidence with reference to his connection as administrator with the tortious acts alleged does not justify the conclusion that the alleged perpetrator was his agent.

Counsel argues on behalf of Stillman M. Frankland that the record shows that he never saw the plaintiff, never knew of him, that he was not present at the time the constable executed the writ, and that his first knowledge of the events of April 27, 1940 was when he was served with process in the present suit. The jury, on the finding of questions of fact did not agree with his contention. There was evidence in the record on behalf of Genesen that he was instructed not only by the father of Stillman to obtain possession of the premises but also by Stillman M. Frankland, and that he was acting for them and not on his own volition. True the suit was originally instituted by his father, but after his father's death, Stillman not only directed the prosecution of the suit but advanced the costs and necessary expenses in reference thereto. He also knew that plaintiff resided on the premises in question but never at any time instituted forcible de-

tainer proceeding against plaintiff, nor did he serve or cause to be served on plaintiff any demand or notice of whatsoever kind or nature for possession. Samuel M. Frankland having died on February 2, 1940, intestate, Stillman and Stillman's mother as heirs became the owner of the property in question. Stillman in seeking to acquire possession of the premises in question was acting in his own individual capacity and not in a representative capacity when he was prosecuting the forcible detainer proceeding. Although he was not present on April 27, 1940, at the premises in question when the acts complained of were committed, Genesen, his agent, had directed the constable to complete the eviction, and Stillman M. Frankland prior thereto had directed Genesen to secure possession of the premises. It was not necessary that Frankland be present at the time of the commission of the trespass. It is sufficient to bind him if his agent or representative was present and had directed or taken part in the trespass complained of, and he would be held accountable under those circumstances as if he was actually present. It is the law that where an officer by his conduct in the execution of a writ becomes liable for damages as a trespasser, all who direct, request or aid or abet become joint trespassers with him and are responsible for damages that result therefrom. (*Wolf v. Boettcher,* 64 Ill. 316.)

We must necessarily hold that the tortious acts complained of were not the acts of the executor or administrator. The tort committed by an executor or administrator is ordinarily committed by him as an individual and does not render the estate liable. (33 C. J. (2) 1260.) The property in question became the property of Stillman M. Frankland and his mother at the time of the death of his father, and he was acting for himself and those interested in title in the property, and not in the capacity of an administrator.

We next turn to the contention of Argo State Bank, a corporation, which argues that there is no evidence in the record tending to sustain the charges made against it and none upon which the jury could reasonably find that the wrongs complained of by plaintiff were brought about by Charles L. Genesen while he was acting as agent, servant, or employee of the bank or within the scope of his employment. The record shows that Charles L. Genesen was cashier of the Argo State Bank; that he was also engaged in the real estate and insurance business, separate and apart from his duties at the bank; that the bank as a bank had no dealings with either the plaintiff or his son Harold in reference to the property in question; and that the property was owned by S. M. Frankland individually in his lifetime and that although he was president of the bank, the bank had no interest in the property whatsoever. It is true that the record shows (plaintiff's exhibits 1 to 11 inclusive) receipts, issued in the name of the bank in the year 1935, except plaintiff's exhibit 1, dated October 15, 1937, which were signed by some of the bank's employees and given to plaintiff for rent of the premises and mention is made in the evidence of a certain letter which had been written on the stationery of the bank in 1937 and addressed to plaintiff, requesting him and his son Harold to call at the bank in reference to increasing the rent of the premises in question. The record further shows that Ferenkchak, who was at the time acting as receiver in the foreclosure proceedings wherein Samuel M. Frankland was plaintiff, received all of the money which had been paid to the bank as rent for the premises in question, that the bank turned it over to Ferenkchak as receiver, and that Ferenkchak as receiver duly accounted for it in the foreclosure proceedings.

The record is silent and we fail to find any evidence connecting the bank with the direction in any manner

of the institution or prosecution of the forcible detainer proceedings; and there is no evidence which shows or tends to show that Genesen was acting for or on behalf of the bank, either expressly or impliedly, either prior to or at the time of the institution of said proceedings or of the prosecution thereof or the securing in any manner of the possession of said property. The mere fact that O'Brien went to the bank and asked Genesen to get the police officer and that Genesen proceeded with the chief of police to the property could not in any manner bind the bank. It is clearly shown that Genesen was acting as the agent for and on behalf of Stillman M. Frankland at that time, and not for the bank. At the time of the institution of the proceedings in question the bank did not own or have any interest in the property, nor was it acting as agent for any one in connection therewith, nor were its employees either expressly or impliedly authorized or directed in any manner to participate in said proceedings, nor did it expressly or impliedly authorize or direct any of the acts to be committed of which complaint is made.

After careful consideration of all the evidence, we feel that the court was justified in entering judgment notwithstanding the verdict in favor of Argo State Bank, a corporation and Stillman M. Frankland as administrator of the estate of S. M. Frankland, deceased, but committed error in entering judgment notwithstanding the verdict in favor of Stillman M. Frankland individually. Under our practice a motion for judgment notwithstanding the verdict has the same effect as a motion for a directed verdict and raises same questions. Taking the evidence on behalf of plaintiff and considering the same as true with reference to defendant Argo State Bank, together with all legitimate inferences to be drawn therefrom it does not tend to make out a case against the Argo State Bank.

Donald O'Brien and Charles L. Genesen have not appealed and they are not before this court.

Other points are raised but we deem it unnecessary to consider them in view of the conclusion we have reached.

For the reasons hereinabove given, the judgment entered notwithstanding the verdict in favor of Argo State Bank a corporation, and Stillman M. Frankland as administrator of the estate of S. M. Frankland, deceased, is affirmed. The judgment notwithstanding the verdict in favor of Stillman M. Frankland individually is reversed, and the cause is remanded with directions to enter an order vacating the judgment notwithstanding the verdict in favor of Stillman M. Frankland individually, and to enter a judgment on the verdict for plaintiff and against Stillman M. Frankland individually, said judgment to bear interest from the date of the verdict.

*Affirmed in part and reversed in part with directions.*

BURKE, P. J., and KILEY, J., concur.