O. L. BROWN AND WIFE, ANNA MAE BROWN, v. GUARANTY ESTATES CORPORATION, TRUSTEE FOR LOUIS MITCHELL, INCOMPETENT; NATIONAL SURETY CORPORATION; AND GUS G. MITCHELL, ADMINISTRATOR OF LOUIS MITCHELL, DECEASED.

(Filed 17 March, 1954.)

**1. Attachment § 23—**

Where an order of attachment is improperly obtained or tortiously employed, the attachment defendant may (1) proceed on the attachment bond if either of the two conditions specified in G.S. 1-440.10 exists, (2) sue for malicious and wrongful attachment if the essential elements of that tort are present, (3) sue for abuse of process if the order of attachment is used to accomplish a result not lawfully or properly obtainable under it.

**2. Same—**

If an order of attachment is dissolved, dismissed, or set aside by the court, or if the attachment plaintiff fails to obtain judgment against the attachment defendant, G.S. 1-440.10, the attachment defendant may, without the necessity of showing malice or want of probable cause, proceed against the attachment plaintiff and his surety jointly or severally by independent action or motion in the cause, G.S. 1-440.45 (c), on the contractual obligations of the attachment plaintiff and his surety embodied in the bond and the statute under which it is given.

**3. Same—**

The right of the attachment defendant to sue the attachment plaintiff for wrongfully and maliciously suing out the order of attachment without probable cause and in procuring its levy on the property of the attachment defendant, is for an independent tort committed by the attachment plain-

tiff, and the surety's liability on the attachment bond may not be asserted in a suit against the attachment plaintiff for such tort.

**4. Same—**

Damages recoverable by the attachment defendant in a statutory proceeding against the attachment plaintiff and the surety on his bond is limited as to the attachment plaintiff to the actual damages sustained by attachment defendant by reason of the levy of the order of attachment, and is limited as to the surety to the amount of the attachment bond.

**5. Same—**

In an action by attachment defendant against attachment plaintiff for malicious and wrongful attachment, the attachment defendant must show that attachment plaintiff maliciously sued out his order of attachment without probable cause for believing that the alleged ground for attachment existed, that the order of attachment was actually levied upon property of attachment defendant, thereby depriving him of his right to use his property for any legitimate purpose to his damage, and that the attachment proceeding legally terminated in favor of attachment defendant.

**6. Same—**

Malice necessary to support an action for wrongful and malicious attachment may be either legal malice, which consists of the doing of a wrongful act intentionally without just and lawful cause or excuse, or actual malice, in which instance exemplary or punitive damages may be awarded.

**7. Executors and Administrators § 12½—**

Ordinarily, an action will not lie against an administrator or executor in his representative capacity for torts of the administrator or executor committed in administering the estate, except where the estate actually receives assets acquired by the tortious act of the administrator or executor, the estate may be held responsible to the extent of the value of such assets.

**8. Executors and Administrators § 30e—**

An administrator or executor is personally liable for his own torts even though they are committed in the administration of the estate.

**9. Insane Persons § 3—**

Under G.S. 35-2 the clerk of Superior Court may appoint either a guardian or trustee to manage the estate of a person who is found by an inquisition of lunacy to be mentally incompetent to manage his own affairs, and a trustee appointed under this statute is subject to the laws enacted for the control and handling of estates by guardians.

**10. Insane Persons § 9d—**

Ordinarily, an action will not lie against a guardian or trustee of an insane person in his representative capacity for torts which the guardian or trustee commits in managing the estate.

**11. Insane Persons § 10—**

A guardian or trustee of an insane person is personally liable for his own torts, even though they are committed in the management of the estate of his ward.

**12. Attachment § 23: Executors and Administrators § 12½: Insane Persons § 9d—Complaint held not to state cause for wrongful attachment as against surety and personal representatives of creditor.**

In an action by the attachment defendant the complaint alleged that the creditor was declared incompetent and that the trustee of his estate brought a civil action on the debt and, as trustee, sued out an attachment with malice and without probable cause for believing in the existence of the ground of attachment, and procured the levy of the order of attachment on attachment defendant's property, that upon the death of the incompetent his administrator joined the trustee in prosecuting the action and ancillary attachment proceedings, acting maliciously and without probable cause, and that the orders of attachment were thereafter dissolved. *Held:* The complaint states a common law action for malicious and wrongful attachment and not a statutory proceeding on the attachment bond, and therefore the complaint fails to state a cause of action against the trustee or the administrator in their representative capacities, or against the surety on the attachment bond, and their oral demurrers were properly sustained.

**13. Pleadings § 22b—**

The trial court has authority to permit an amendment to the pleadings which does not change substantially the claim or defense, G.S. 1-163. The use of "and/or" in the order disapproved.

APPEALS by plaintiffs and defendants from *Hall, Special Judge,* at the November Term, 1953, of SURRY.

Civil action for malicious and wrongful attachment.

The facts necessary to an understanding of the legal questions arising on these appeals are stated in the numbered paragraphs which immediately follow.

1. The pleadings consist of the complaint of the plaintiffs O. L. Brown and Anna Mae Brown, who are husband and wife; the answer of the defendant Guaranty Estates Corporation, which is sued in its representative capacity as trustee of its insane ward, Louis Mitchell; the answer of the defendant National Surety Corporation; the answer of Gus G. Mitchell, who is sued in his representative capacity as administrator of his intestate, Louis Mitchell; and the replies of the plaintiffs to the answers of the several defendants.

2. When the pleadings of the plaintiffs are recast in chronological order and ultimate terms, they make these allegations: On 26 May, 1949, Louis Mitchell accommodated the plaintiffs by endorsing their note for $10,000.00 at the Bank of Elkin, and took from them a deed of trust on certain land to secure himself against loss upon his endorsement. On 17 May, 1950, Louis Mitchell was found by an inquisition of lunacy to be mentally incompetent to manage his own affairs, and Guaranty Estates Corporation was appointed trustee of his estate under the provisions of G.S. 35-2. On 20 June, 1950, Guaranty Estates Corporation, acting in

its representative capacity as trustee, brought a civil action against the plaintiffs in the Superior Court of Yadkin County for the ostensible purpose of saving the estate of its ward harmless by reason of his endorsement of the note at the Bank of Elkin. At the time of the issuance of the summons in such action, Guaranty Estates Corporation, as trustee, acting with malice and without probable cause for believing any ground for attachment existed, presented an affidavit to the Clerk of the Superior Court of Yadkin County falsely stating that it was entitled to ancillary attachments against the property of the plaintiffs because they were "about to assign, dispose of, or secrete" such property with intent to defraud their creditors, furnished an attachment bond in the amount of $10,000.00 executed by itself as principal and by National Surety Corporation as surety, caused the Clerk of the Superior Court of Yadkin County to issue ancillary orders of attachment against the property of the plaintiffs, and procured the Sheriffs of Lee and Yadkin Counties to levy the ancillary orders of attachment upon the lands, chattels, and bank deposits of the plaintiffs. The plaintiffs moved without delay to dissolve the ancillary orders of attachment, but before their motion could be heard the insane ward Louis Mitchell died. Three days after that event, to wit, on 12 July, 1950, the Clerk of the Superior Court of Yadkin County granted the motion of the plaintiffs, and entered an order dissolving the ancillary orders of attachment. The Clerk's order of dissolution never took effect because Gus G. Mitchell forthwith qualified as administrator of Louis Mitchell, had himself made a party plaintiff in the pending action in his representative capacity as administrator, joined the trustee in appealing the Clerk's order of dissolution to the Judge at term, and continued the prosecution of the action and the ancillary attachment proceedings. In so doing, Gus G. Mitchell, the administrator, acted with malice and without probable cause for believing in the existence of the ground on which the ancillary orders of attachment had issued. During January, 1951, the deed of trust from the plaintiffs to Louis Mitchell was foreclosed, and the proceeds of the foreclosure were used to exonerate the estate of Louis Mitchell from liability on account of his endorsement of the note at the Bank of Elkin. Shortly thereafter, to wit, on 5 February, 1951, the trustee and the administrator submitted to a voluntary nonsuit in the Yadkin County case, and the ancillary orders of attachment issued in that suit were thereupon dissolved. As the result of the malicious and wrongful acts of the trustee and the administrator, the plaintiffs were deprived of their right to use their property from about 20 June, 1950, until 5 February, 1951, and incurred expenses and suffered injuries to their business, credit, and feelings in sums totaling $20,000.00. "The plaintiffs pray judgment against the defendants, Guaranty Estates Corporation, Trustee for Louis Mitchell, incompetent, and Gus G. Mitchell,

Administrator of Louis Mitchell, deceased, for the sum of $20,000.00, and against the defendant, National Surety Corporation, to the extent of $10,000.00, as covered by the bond of said defendant; for the cost of this action; and for such other and further relief as the plaintiffs may be entitled to in the premises."

3. The action came on for trial before Judge Hall and a jury at the November Term, 1953, of the Superior Court of Surry County. Pending the introduction of testimony, the defendants demurred *ore tenus* to the pleadings of the plaintiffs on the ground that such pleadings did not state a cause of action against any of them. Judge Hall entered an order sustaining the oral demurrers, and allowing the plaintiffs "thirty days to amend and/or make new parties." The plaintiffs excepted to the portion of the order sustaining the oral demurrers, and appealed; and the defendants excepted to the portion of the order allowing plaintiffs to amend, and appealed.

*J. T. Reece and Allen, Henderson & Williams for plaintiffs.*
*Earl C. James for defendant Guaranty Estates Corporation, Trustee.*
*Brooks, McLendon, Brim & Holderness for defendant National Surety Corporation.*
*James J. Randleman for defendant Gus G. Mitchell, Administrator.*

ERVIN, J. The appeal of the plaintiffs presents the question whether their pleadings state a cause of action against the defendants or any of them. The rules of law bearing on this question are set forth in the seven ensuing paragraphs.

1. Where an order of attachment is improperly obtained or tortiously employed, the attachment defendant may have several modes of obtaining redress for injuries caused by its levy on his property. He may proceed on the attachment bond if either of the two conditions specified in the statute now codified as G.S. 1-440.10 exists. *Whitaker v. Wade,* 229 N.C. 327, 49 S.E. 2d 627; *Smith v. Bonding Co.,* 160 N.C. 574, 76 S.E. 481; *Wright v. Harris,* 160 N.C. 542, 76 S.E. 489. He may sue for malicious and wrongful attachment if the essential elements of that tort are present. *Tyler v. Mahoney,* 168 N.C. 237, 84 S.E. 362; *Id.,* 166 N.C. 509, 82 S.E. 870; *Wright v. Harris, supra; Railroad Co. v. Hardware Co.,* 143 N.C. 54, 55 S.E. 422; *Id.,* 138 N.C. 174, 50 S.E. 571, 3 Ann. Cas. 720; *Id.,* 135 N.C. 73, 47 S.E. 234. He may even maintain an action for abuse of process if the attachment plaintiff maliciously perverts and employs a regularly issued order of attachment to accomplish a result not lawfully or properly obtainable under it. *Wright v. Harris, supra; Railroad Co. v. Hardware Co.,* 143 N.C. 54, 55 S.E. 422; *Id.,* 138 N.C. 174, 50 S.E. 571, 3 Ann. Cas. 720.

2. A proceeding on an attachment bond differs greatly from an action for malicious and wrongful attachment. The former is a statutory proceeding based on the contractual obligations of the attachment plaintiff and his surety embodied in the attachment bond and the statute under which it is given; whereas, the latter is an independent common law action founded on the tort of the attachment plaintiff in maliciously suing out an order of attachment without probable cause and procuring its levy on the property of the attachment defendant. *Martin v. Rexford,* 170 N.C. 540, 87 S.E. 352; *Railroad Co. v. Hardware Co.,* 138 N.C. 174, 50 S.E. 571, 3 Ann. Cas. 720; *Id.,* 135 N.C. 73, 47 S.E. 234; 7 C.J.S., Attachment, section 163. The statutory proceeding on the attachment bond may be prosecuted by either a motion in the original cause or by an independent action. G.S. 1-440.45 (c); *Whitaker v. Wade, supra.* In enforcing liability on the attachment bond, the attachment defendant may proceed against the attachment plaintiff and his surety jointly or separately. *Smith v. Bonding Co., supra;* McIntosh: North Carolina Practice and Procedure in Civil Cases, section 235; 5 Am. Jur., Attachment and Garnishment, section 1029. It is otherwise with respect to an action for malicious and wrongful attachment. Since his liability arises out of the contract embodied in the attachment bond and the statute under which it is given, the surety is not liable to the attachment defendant for the tort of the attachment plaintiff in maliciously suing out the order of attachment without probable cause and procuring its levy on the property of the attachment defendant. As a consequence, the attachment defendant cannot properly unite in one suit an action against the attachment plaintiff for malicious and wrongful attachment, and a proceeding against the surety for enforcement of liability on the attachment bond. *Martin v. Rexford, supra; Railroad Co. v. Hardware Co.,* 135 N.C. 73, 47 S.E. 234.

3. The right of the attachment defendant to proceed on the attachment bond does not depend on a showing of malice and want of probable cause. 7 C.J.S., Attachment, section 163. See in this connection the observations of *Justice Platt D. Walker* in *Mahoney v. Tyler,* 136 N.C. 40, 48 S.E. 549. Since the attachment bond is conditioned that if the order of attachment is dissolved, dismissed or set aside by the court, or if the attachment plaintiff fails to obtain judgment against the attachment defendant, the attachment plaintiff will pay all costs that may be awarded to the attachment defendant and all damages that the attachment defendant may sustain by reason of the attachment, the attachment defendant may bring the statutory proceeding to enforce liability on the bond under two conditions, namely, where the order of attachment is dissolved, dismissed or set aside by the court, or where the attachment plaintiff fails to obtain judgment against him. G.S. 1-440.10; *Frick Co. v. Deiter,* 168 S.C. 289, 167 S.E. 499; 7 C.J.S., Attachment, section 163. When he

proceeds on the bond under either of these conditions, the attachment defendant is entitled to recover the actual damages sustained by him by reason of the levy of the order of attachment on his property. *Martin v. Rexford, supra; Tyler v. Mahoney,* 168 N.C. 237, 84 S.E. 362; *Railroad Co. v. Hardware Co.,* 135 N.C. 73, 47 S.E. 234. The liability of the surety, however, is limited to the amount of the attachment bond. G.S. 1-440.10; McIntosh: North Carolina Practice and Procedure in Civil Cases, section 827.

4. Where the attachment defendant sues the attachment plaintiff for malicious and wrongful attachment, it is incumbent upon him to establish these essential elements of the tort: (1) That the attachment plaintiff sued out an order of attachment against the property of the attachment defendant without probable cause for believing that the alleged ground for attachment existed (*Tyler v. Mahoney,* 166 N.C. 509, 82 S.E. 870; *Railroad Co. v. Hardware Co.,* 143 N.C. 54, 55 S.E. 422; *Id.,* 138 N.C. 174, 50 S.E. 571, 3 Ann. Cas. 720; *Mahoney v. Tyler, supra; Abrams v. Pender,* 44 N.C. 260; *Davis v. Gully,* 19 N.C. 360; *Williams v. Hunter,* 10 N.C. 545, 14 Am. D. 597); (2) that the attachment plaintiff sued out such order of attachment maliciously (*Wright v. Harris, supra; Railroad Co. v. Hardware Co.,* 143 N.C. 54, 55 S.E. 422; *Id.,* 138 N.C. 174, 50 S.E. 571, 3 Ann. Cas. 720; *Id.,* 135 N.C. 73, 47 S.E. 234; *Davis v. Gully, supra; Williams v. Hunter, supra*); (3) that the order of attachment was actually levied on the property of the attachment defendant, who was thereby deprived of his right to use his property for any legitimate purpose (*Railroad Co. v. Hardware Co.,* 138 N.C. 174, 50 S.E. 571, 3 Ann. Cas. 720; *Terry v. Davis,* 114 N.C. 31, 18 S.E. 943; *Ely v. Davis,* 111 N.C. 24, 15 S.E. 878; American Law Institute's Restatement of the Law of Torts, section 677); (4) that the attachment proceeding has legally terminated in favor of the attachment defendant (*Whitaker v. Wade, supra; Wright v. Harris, supra; Railroad Co. v. Hardware Co.,* 143 N.C. 54, 55 S.E. 422; *Id.,* 138 N.C. 174, 50 S.E. 571, 3 Ann. Cas. 720; *Kramer v. Electric Light Co.,* 95 N.C. 277); and (5) that the attachment defendant suffered damage as the result of the levy of the order of attachment upon his property. 7 C.J.S., Attachment, section 520. The malice essential to support an action for malicious and wrongful attachment may be either actual malice or legal malice. *Wright v. Harris, supra;* 5 Am. Jur., Attachment and Garnishment, section 986. Legal malice "consists in a wrongful act intentionally done . . . without just and lawful cause or excuse." *Wright v. Harris, supra.* It is well to note at this juncture that the statement of *Judge Pearson* in *Kirkham v. Coe,* 46 N.C. 423, and the statement of *Judge Clark* in *Tyler v. Mahoney,* 168 N.C. 237, 84 S.E. 362, to the effect that it is not necessary to prove malice in an action for malicious and wrongful attachment are not good law. Although

*Judge Pearson's* erroneous statement is apparently accepted as valid in some parts of the somewhat inconsistent opinion in *Railroad Co. v. Hardware Co.,* 138 N.C. 174, 50 N.C. 571, 3 Ann. Cas. 720, it is rejected in express terms by a unanimous Court in *Wright v. Harris, supra. Judge Clark's* erroneous statement is avowedly based on *Tyler v. Mahoney,* 166 N.C. 509, 82 S.E. 870, which merely holds, in essence, that legal malice, as distinguished from actual malice, is sufficient to sustain an award of actual damages in an action for malicious and wrongful attachment. Moreover, *Judge Clark's* erroneous statement is contradicted by his own positive assertion in *Railroad Co. v. Hardware Co.,* 143 N.C. 54, 55 S.E. 422, that an action for this tort "cannot be maintained . . . if . . . there was no malice." Where the attachment defendant successfully prosecutes an action for malicious and wrongful attachment against the attachment plaintiff, he is entitled to recover the actual damages suffered by him by reason of the attachment plaintiff's tortious act. *Tyler v. Mahoney,* 168 N.C. 237, 84 S.E. 362. The actual damages may include compensation "for every injury to his credit, business, or feelings." *Railroad Co. v. Hardware Co.,* 135 N.C. 73, 47 S.E. 234. He may even be awarded exemplary or punitive damages by the jury if he alleges and proves that the attachment plaintiff was actuated by actual malice, as distinguished from legal malice, in suing out the order of attachment. *Martin v. Rexford, supra; Tyler v. Mahoney,* 168 N.C. 237, 84 S.E. 362; *Id.,* 166 N.C. 509, 82 S.E. 870; *Wright v. Harris, supra; Railroad Co. v. Hardware Co.,* 138 N.C. 174, 50 S.E. 541, 3 Ann. Cas. 720.

5. As a general rule, the estate of a decedent cannot be held liable for torts which an administrator or an executor commits in administering the estate. In consequence, an action will not ordinarily lie against an administrator or an executor in his representative capacity for such torts. *Hood, Comr. of Banks, v. Stewart,* 209 N.C. 424, 184 S.E. 36; *Hall v. Trust Co.,* 200 N.C. 734, 158 S.E. 388; *Allen v. Armfield,* 190 N.C. 870, 129 S.E. 801; *Whisnant v. Price,* 175 N.C. 611, 96 S.E. 27; *Mobley v. Runnels,* 14 N.C. 303; *Owens v. Lackey,* 234 Ala. 144, 174 So. 231; *Digby v. Cook,* 200 Ark. 1004, 142 S.W. 2d 228; *Rapaport v. Forer,* 20 Cal. App. 2d 271, 66 P. 2d 1242; *Evans v. Dickey,* 50 Ga. App. 127, 177 S.E. 87; *Christensen v. Frankland,* 324 Ill. App. 391, 58 N.E. 2d 289; *Ostheimer v. McNutt,* 116 Ind. App. 649, 66 N.E. 2d 142; *Kirchner v. Muller,* 280 N.Y. 23, 19 N.E. 2d 665, 127 A.L.R. 681; *Boyle v. Nolan,* 123 N.J.L. 365, 8 A. 2d 358; 21 Am. Jur., Executors and Administrators, section 303; 33 C.J.S., Executors and Administrators, section 250. "The rule has . . . been applied to actions based on the institution of wrongful legal proceedings by a personal representative." 21 Am. Jur., Executors and Administrators, section 303. See in this connection *Gilmer v. Wier,* 8 Ala. 72, and the other cases collected in the annotation in 44

A.L.R. 674. The rule is subject to this exception : Where the estate of a decedent actually receives assets acquired by an administrator or an executor by a tortious act, the party wronged thereby and entitled to such assets may hold the estate responsible to the extent of the value of such assets. *McKinnie's Executors v. Oliphant's Executors,* 2 N.C. 3 ; 21 Am. Jur., Executors and Administrators, section 306 ; 33 C.J.S., Administrators, section 250. An administrator or an executor is personally liable for his own torts even though they are committed in the administration of the estate. *Pettijohn v. Williams,* 46 N.C. 145 ; 21 Am. Jur., Executors and Administrators, section 303 ; 33 C.J.S., Executors and Administrators, section 250.

6. Under G.S. 35-2, the clerk of the Superior Court may appoint either a guardian or a trustee to manage the estate of a person who is found by an inquisition of lunacy to be mentally incompetent to manage his own affairs. A trustee appointed under this statute "is subject to the laws . . . enacted for the control and handling of estates by guardians."

7. As a general rule, the estate of an insane person cannot be held liable for torts which a guardian or a trustee commits in managing the estate. For this reason, an action will not ordinarily lie against a guardian or a trustee of an insane person in his representative capacity for such torts. But a guardian or a trustee of an insane person is personally liable for his own torts, even though they are committed in the management of the estate of his ward. *Gillet v. Shaw,* 117 Md. 508, 83 A. 394, 42 L.R.A. (N.S.) 87 ; *Rooney v. People's Trust Co.,* 61 Misc. 159, 114 N.Y.S. 612 ; *Ward v. Rogers,* 51 Misc. 299, 100 N.Y.S. 1058, 19 N. Y. Ann. Cas. 56 ; *Reams v. Taylor,* 31 Utah 288, 87 P. 1089, 8 L.R.A. (N.S.) 436, 120 Am. S. R. 930, 11 Ann. Cas. 51 ; 44 C.J.S., Insane Persons, section 87.

When the pleadings of the plaintiffs are analyzed in the light of these rules of law, these things are manifest :

This is a common law action for malicious and wrongful attachment, and not a statutory proceeding on an attachment bond. The plaintiffs seek to recover damages of the defendant Guaranty Estates Corporation in its representative capacity as trustee of its insane ward Louis Mitchell upon pleadings alleging that in its management of the estate of its ward it maliciously sued out an order of attachment without probable cause, and procured the levy of the order of attachment upon the property of the plaintiffs. These pleadings state no cause of action against the defendant Guaranty Estates Corporation as trustee because their allegations bring the case within the general rule that the estate of an insane person cannot be subjected to liability for the tort of his guardian or his trustee, even though his guardian or his trustee commits the tort in the management of his estate. The plaintiffs seek to recover damages of the defendant Gus G. Mitchell in his representative capacity as administrator of

the decedent Louis Mitchell upon pleadings alleging that in his administration of the estate of the decedent he maliciously continued an attachment proceeding against the property of the plaintiffs without probable cause, and in that way tortiously deprived the plaintiffs of their right to use their property for any legitimate purpose. These pleadings state no cause of action against the defendant Gus G. Mitchell as administrator because their allegations bring the case within the general rule that the estate of a decedent cannot be subjected to liability for the tort of an administrator or an executor, even though the administrator or the executor commits the tort in the administration of the estate. Moreover, the pleadings of the plaintiffs state no cause of action against the defendant National Surety Corporation for the very simple reason that a surety on an attachment bond is not liable for the tortious act of the attachment plaintiff in maliciously and wrongfully attaching the property of the attachment defendant.

What has been said shows that the presiding judge rightly ruled on the oral demurrers.

This brings us to the appeal of the defendants, which challenges the validity of the portion of the order allowing the plaintiff's "thirty days to amend and/or make new parties."

The presiding judge murdered the King's, the Queen's, and everybody's English by using the monstrous linguistic abomination "and/or" in this portion of the order. We are constrained to adjudge, however, that the judge's law is better than his grammar, and that this portion of the order finds sanction in G.S. 1-163, which vests in the judge of the Superior Court discretionary authority to permit an amendment "when the amendment does not change substantially the claim or defense." McIntosh: North Carolina Practice and Procedure in Civil Cases, section 487. This portion of the order contemplates that any amendment made by the plaintiffs will not offend the restrictive provision of G.S. 1-163. Whether such an amendment can be made is something for their able counsel to ponder.

Affirmed on the plaintiffs' appeal.

Affirmed on the defendants' appeal.